1   BARRY J. PORTMAN
    Federal Public Defender
2   ELIZABETH M. FALK
    Assistant Federal Public Defender
3   450 Golden Gate Avenue
    San Francisco, CA  94102
4   Telephone:  (415) 436-7700

5   Counsel for Defendant MAYS

6

                    IN THE UNITED STATES DISTRICT COURT
7
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
8

9   UNITED STATES OF AMERICA,            )      No. CR 07-0295 MAG
                                         )
10                      Plaintiff,       )      **DEFENDANT'S SUPPLEMENTAL**
                                         )      **MEMORANDUM OF POINTS AND**
11  v.                                   )      **AUTHORITIES IN SUPPORT**
                                         )      **OF MOTION TO SUPPRESS**
12                                       )      **EVIDENCE**
                                         )
13  NICOLE MAYS,                         )
                                         )      Date:   November 20, 2007
14                      Defendant.       )      Time:  2:00 p.m.
    _____)      Court: The Honorable Elizabeth D.
15                                                      Laporte

16

17

18

19

20

21

22

23

24

25

26

1

## TABLE OF CONTENTS

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.    The Approach of Officer Hart's Vehicle . . . . . . . . . . . . . . . . . . . . 2

        B.    The Front License Plate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        C.    The Approach of Officer Hart on Foot . . . . . . . . . . . . . . . . . . . 4

        D.    The Bottle Cap and Lighter . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        E.    The Removal of Passenger Jenny Benzon from the Vehicle . . . . . 5

        F.    Officer Hart's Memory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    All Evidence and Statements must Be Suppressed Because Officer Hart's
        Approach of the Car and Insertion of His Head in the Passenger Window
        Constituted a Seizure Without Reasonable Suspicion . . . . . . . . . . . . . . . . . . . . 7

    II.    All Evidence and Statements must Be Suppressed Because the Officers
        Effectuated an Unlawful Seizure by Ordering Ms. Benzon out of the Car . . . . . 11

        A.    Ms. Mays Was Seized When Ms. Benzon Was Ordered Out
            of the Car Because Under the Circumstances, No Reasonable
            Person Would Feel Free to Leave . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.    The Seizure Was Unlawful Because Officer Hart Did Not
            Have Reasonable Suspicion of Criminal Activity . . . . . . . . . . . 12

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4     *Brendlin v. California*, 127 S. Ct. 2400 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

5     *Delaware v. Prouse*, 440 U.S. 648 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

6     *Florida v. Bostick*, 501 U.S. 429 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

7     *Gonzalez-Riviera v. INS*, 22 F.3d 1441 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

8     *Katz v. United States*, 389 U.S. 347 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

9     *Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

10    *United States v. Arvizu*, 534 U.S. 266 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

11    *United States v. Berry,* 670 F.2d 583 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12    *United States v. Colin*, 314 F.3d 439 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

13    *United States v. Green*, 111 F.3d 515 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7, 8

14    *United States v. Howard*, 828 F.2d 552 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

15    *United States v. Jimenez-Medina*, 173 F.3d 752 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . .     9

16    *United States v. Linn*, 880 F.2d 209 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

17    *United States v. Lopez-Soto*, 205 F.3d 1101 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . .     6

18    *United States v. Malone*, 886 F.2d 1162 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

19    *United States v. Mendenhall*, 446 U.S. 544 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

20    *United States v. Montero- Camargo*, 208 F.3d 1122 (9th Cir. 2000) . . . . . . . . . . . . . . . . .     6, 7, 9

21    *United States v. Pajari*, 715 F.2d 1378 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

22    *Washington v. Gilmore*, 1998 U.S. Dist. LEXIS 17309 (N.D. C.A. October 30, 1998) . . . . . .     11

23    *Whren v. United States*, 517 U.S. 806 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

24

25

26

ii

1  BARRY J. PORTMAN
   Federal Public Defender
2  ELIZABETH M. FALK
   Assistant Federal Public Defender
3  450 Golden Gate Avenue
   San Francisco, CA  94102
4  Telephone:  (415) 436-7700

5  Counsel for Defendant MAYS

6

7                    IN THE UNITED STATES DISTRICT COURT

8               FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  UNITED STATES OF AMERICA,              )      No. CR 07-0295 MAG
                                          )
10                         Plaintiff,     )      **DEFENDANT'S SUPPLEMENTAL**
                                          )      **MEMORANDUM OF POINTS AND**
11 v.                                     )      **AUTHORITIES IN SUPPORT**
                                          )_____**OF MOTION TO SUPPRESS**
12                                        )      **EVIDENCE**
                                          )
13 NICOLE MAYS,                           )
                                          )      Date:  November 20, 2007
14                         Defendant.     )      Time:  2:00 p.m.
   _____)      Court: The Honorable Elizabeth D.
15                                                      Laporte

16
                          **INTRODUCTION**
17
        On November 20, 2007, this Court conducted an evidentiary hearing in this matter in
18
   connection with Ms. Mays' Motion to Suppress Evidence.  At issue at the hearing was whether or
19
   not Officer Hart had reasonable suspicion to seize Ms. Mays' vehicle on March 18, 2007.  As Ms.
20
   Mays was seized within the meaning of the Fourth Amendment, and the officer lacked reasonable
21
   suspicion for the seizure, the evidence secured against Ms. Mays must be suppressed.
22
                       **STATEMENT OF FACTS**
23
        All facts cited in this Memorandum are taken from the Transcript of Evidentiary Hearing
24
   dated 11/20/07 (hereinafter, "Trans."), attached as Exhibit A.  The salient facts at issue at the hearing
25
   are as follows: (1) the approach of Officer Hart's vehicle, its initial proximity to Ms. Mays' car, and
26

his action of sticking his head inside Ms. Mays' vehicle; (2) whether or not the car had a front license plate properly affixed; (3) whether the passenger, Jenny Benzon, made any movements as Officer Hart approached Ms. Mays' car on foot, and (4) the location of the Bic lighter and the bottle cap. Each of these factual issues are discussed below, in turn.

### A.    The Approach of Officer Hart's Vehicle

At the hearing, Officer Hart testified that his vehicle circled the road surrounding the field where Ms. Mays' vehicle was parked.  *See* Trans. at 8:16-22.  He further testified that "the occupants kind of followed the path of my car with their head, turned their eyes like watching me." *Id.* at 8:19-21.

On cross examination, Officer Hart later testified that the reason he decided to approach Ms. Mays' vehicle was that he saw "the occupants in the car that were acting suspiciously to a uniformed police officer in a marked car, and that arose my suspicion as to those occupants in that car, and I was going to go and check, probably make contact with them, do a consensual contact with them as best I can concerning public property.  So I made my approach to further my – why they had acted so suspiciously to a policeman passing by arose my suspicion to make contact." *Id.* at 24:24-25:6.  He further testified that the "suspicious contact" was nothing more than the fact that the occupants watched Officer Hart as he drove around the road that surrounded the vehicle. *Id.*  At 25:7-8.

 After driving along the north end of the road closets to the beach, Officer Hart testified that he drove across the grass and parked 20-25 feet away from Ms. Mays' vehicle, although he couldn't recall exactly. *Id.* at 9:18-19.  On cross examination, Officer Hart agreed with undersigned counsel that he really couldn't remember how far he parked away from Ms. Mays' car. *Id.* at 29:25-30:2.  In contrast, Ms. Benzon testified that Officer Hart's car was parked "really close right there (see Hearing Exhibit C) I mean – we couldn't – it was parked really close to us, I guess." (Trans. 49:24-25) and indicated that the distance was five to six feet away.  Trans. 50:5-6.  On Hearing Exhibit E, Ms. Mays concurred with Ms. Benzon's testimony that Officer Hart parked very close to the front end of her automobile, and that she could not drive forward. *See* Hearing Exhibit E; Trans. 108:11-

1 | 12.

2 | **B.    The Front License Plate**

3 |     Officer Hart testified that Ms. Mays' vehicle was missing its front license plate.  *Id* at 9:3-5.

4 | According to Officer Hart, the missing license plate was the reason he approached Ms. Mays' car in

5 | the first place.  *Id*. at 9:5-7.  After approaching the car, Officer Hart testified that he told Ms. Mays

6 | that her car was missing its front license plate.  *Id*. at 11:22-23.  He further testified that he saw the

7 | front license plate "on the dashboard."  *Id*. at 12:4.  Officer Hart was the only witness at the hearing

8 |     No other witness who testified at the hearing supports Officer Hart's testimony about the

9 | front license plate.  Ms. Benzon both denied that there was a conversation about any missing front

10 | license plate, as well as Officer Hart's contention that there was a front license plate on the

11 | dashboard.  Trans. 52:23-53:2.  Furthermore, Ms. Benzon, who had possession of Ms. Mays' car

12 | from the arrest for approximately three days later, testified that when she picked Ms. Mays up from

13 | custody, she specifically saw that there was a front license plate on the car.  59:5-9.  Ms. Benzon

14 | further testified that she did not take any action to put a front license plate on Ms. Mays' car over the

15 | three day period she had possession of the car.  59:24-60:4.  She testified that she is "positive" that

16 | there was a front license plate on Ms, Mays' vehicle.  *Id.*

17 |     Mr. McNatt testified that Officer Hart never mentioned a license plate issue during the

18 | seizure.  Trans. 76:13-14.  He further testified that Officer Hart had asked if the occupants were

19 | drinking, but never talked about a license plate.  *Id.* at 76:20-24.  When asked if Officer Hart told

20 | Ms. Mays that she didn't have a front license plate, Mr. McNatt further testified "No Way.  That

21 | didn't happen." *Id.* at 77:3-4.  Ms. Mays' testimony was in accord with the other occupants of the

22 | car, both that Officer Hart did not ask her about or otherwise discuss a front license plate, and that

23 | she saw that the car had a front license plate properly affixed once she was released from custody.

24 | Trans. 104: 23-25; Trans. 110: 7-9.

25 |     As further evidence that the car in question was lawfully bearing its front license plate,

26 | witnesses John Sullivan and Carmela Perez testified generally that they saw Ms. Mays' vehicle in

1    possession of its front license plate approximately three weeks before the incident (Sullivan) and one

2    month after the incident (Perez).  Mr. Sullivan testified that as of February 25, 2007, he is convinced

3    that there was a front license plate on his automobile.  Trans. 93:6-8.  Moreover, Ms. Perez testified

4    that on April 23, 2007, she noticed that Ms. Mays' vehicle had a front license plate affixed.  Trans.

5    96: 20-21.

6         **C.    The Approach of Officer Hart on Foot**

7         Officer Hart testified that as he approached Ms. Mays' vehicle, the occupants were watching

8    him.  *Id*. at 9:25.  He stated that he then saw "the front seat passenger, a female, immediately, you

9    know, bent very quickly and suddenly at her waist to bend down.  Might have been to conceal herself

10   from a uniformed police officer."  *Id*.  at 11:6-9.   Officer Hart further characterized his impression of

11   Ms. Benzon's movement as "she just bent at the waist in a way and dove down to where I could

12   barely see her back or top of her head . . . she dove down real quickly and swiftly and again, in a very

13   evasive manner, in my opinion."  *Id*. at 30: 14-15.   In Officer Hart's opinion, it appeared from these

14   movements that Ms. Benzon was trying to conceal something from him.  *Id*.  Ms. Benzon denied

15   making any such movement.  *Id*. at 52:1-4.  Ms. Benzon's testimony is supported by Mr. McNatt,

16   who testified that he did not see Ms. Benzon make any such movement.  Trans. 77: 8.  Ms. Mays

17   concurred that Ms. Benzon did not make any such movement.  Trans. 105:1-3.

18        Once Officer Hart reached the car, he testified that he leaned his head into the passenger

19   window to speak to the occupants.  *Id*. at 31: 14-15.  Ms. Benzon concurred that Officer Hart put his

20   head inside the window of the car.  *Id.* at 51:21-22.  According to Ms. Benzon, the window was

21   rolled down "enough for him to really come into the car" and "he stuck his head inside the car.  I

22   thought he was trying to see if we were drinking."  *Id.* at 52:10-14.  Ms. Benzon denied that the

23   officer asked anything about a front license plate; instead, she testified that his initial inquiry was

24   whether or not the occupants were drinking.  Trans. 52:15-24.  Ms. Mays' testimony is in accord that

25   the officer did not ask or discuss a front license plate; instead, he asked the occupants whether or not

26   they had been drinking.  Trans. 104: 1-6, 23-25.

1      **D.      The Bottle Cap and Lighter**

2              Officer Hart testified that as he stood at the passenger side window speaking to the

3      occupants, he "saw there [was] a bottle cap that's common for – like water bottle or soda that was

4      under the dashboard that contained a little bit of water, and there was also a bi[c] style – like a

5      disposable style lighter also on the dashboard." *Id*. at 12:11-15.  According to Officer Hart, "those

6      items, in my training and experience, are consistent with use of controlled substances."  The

7      connection drawn between the plastic bottle cap and drug use by Officer Hart is that "a bottle cap is a

8      way to kind of store or kind of house a small amount of water that will ultimately be used to dissolve

9      the substance, in this case, heroin." *Id*. at 13:13-15.  He further testified that the lighter is used as a

10     "heat source" to melt the heroin, and that "Bic style lighters are extremely common for this purpose."

11     *Id*. at 13:17-18.  He further testified that in the case of a plastic bottle cap, "water [is] just used as a

12     storage container to be used in the cooking process." *Id*. at 33:18-19.  "It's used as a conveyance to

13     transport small amounts of water to the spoon or some other cooking surface, in this case, a spoon."

14     *Id*. at 34:1-3.

15             Ms. Benzon concurred that there was a bottle cap in the car with water in it.  Trans. 53:23-24.

16     However, she claimed that it was in the middle console of the car, where one would "put your keys

17     and stuff."  53:19-22.

18     **E.      The Removal of Passenger Jenny Benzon from the Vehicle**

19             All parties concur that Officer Hart instructed Ms. Benzon to exit the vehicle. *See id*. at

20     13:19-21.  Officer Hart specifically testified that he "may have" opened the car door and agreed with

21     counsel on cross examination that he "told" Ms. Benzon to get out of the car. *Id*. at 35: 6-8.  Ms.

22     Benzon further testified that "she thought" that Officer Hart opened the car door.  Trans. 54: 10-13.

23     **F.      Officer Hart's Memory**

24             As a general matter, Officer Hart agreed with undersigned counsel that he did not have a very

25     clear recollection of the events of March 18, 2007 other than what he wrote in his report, attached to

26     Defendant's initial motion as Exhibit A.  Trans. at 29:22-24.

1                                          **ARGUMENT**

2          The arresting Park Police officer had no warrant to search or arrest Ms. Mays.  The stop and

3    search were therefore presumptively unreasonable.  *See Katz v. United States*, 389 U.S. 347, 357

4    (1967).  The government bears a "heavy" burden in demonstrating that exceptional circumstances

5    justified departure from the warrant requirement.  *United States v. Howard*, 828 F.2d 552, 555 (9th

6    Cir. 1987) (citations omitted); see also *United States v. Linn*, 880 F.2d 209, 214 (9th Cir.

7    1989)(burden is upon the government by a preponderance of the evidence to prove that a warrantless

8    search and/or seizure is lawful).   If the government fails to meet this burden, all evidence and

9    statements flowing from the warrantless seizure must be suppressed.

10         The Fourth Amendment strictly limits an officer's ability to detain and question persons

11   suspected of criminal activity.  The Supreme Court has long held that the traffic stop of a vehicle

12   must meet the Fourth Amendment requirement of at least a reasonable suspicion of criminal conduct.

13   *See Delaware v. Prouse,* 440 U.S. 648, 653 (1979); *see also Whren v. United States,* 517 U.S. 806,

14   809-10 (1996)("Temporary detention of individuals during the stop of an automobile by the police,

15   even if for only a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within

16   the meaning of the Fourth Amendment.").  "Reasonable suspicion is formed by 'specific articulable

17   facts which, together with objective and reasonable inferences, form the basis for suspecting that the

18   particular person detained is engaged in criminal activity."  *United States v. Colin*, 314 F.3d 439, 442

19   (9th Cir. 2002))citing *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000).  "'An

20   officer's inferences must 'be grounded in objective facts and be capable of rational explanation.'"  *Id.*

21    The court looks to the "totality of the circumstances" to see whether the officer had a "particularized

22   and objective basis" for suspecting criminal activity.  *See id.*  (citing *United States v. Arvizu*, 534

23   U.S. 266, 273 (2002).  "The officer in question 'must be able to articulate more than an inchoate and

24   unparticularized suspicion or 'hunch' of criminal activity.'"  *United States v. Montero- Camargo*, 208

25   F.3d 1122, 1129 (9th Cir. 2000).

26         Here, the facts cited by Officer Hart in connection with his initial seizure of Ms. Mays'

vehicle are as follows: the occupants of the car were watching him "diligently, that — just curiously" (Trans. 25:17) and as he recalls, the vehicle was missing its front license plate.  As mentioned above, the specific reason Officer Hart claims that he wanted to "talk" to the occupants, as he recalls today, was to advise Ms. Mays that she was missing a front license plate. *Id.*  Once Officer Hart approached the car, he cites additional facts for the continued seizure recounted above; namely, he claims that Ms. Benzon made a "furtive movement" by turning at her waist and bending down, as well as a plastic water bottle cap with a little bit of water in it, as well as a Bic lighter on the dashboard.

As Officer Hart did not have reasonable suspicion to initially seize Ms. Mays' vehicle, and the remaining facts do not amount to reasonable suspicion for the continued seizure, the seizure was unlawful, and the Court should suppress the evidence adduced from the incident.

## I.    ALL EVIDENCE AND STATEMENTS MUST BE SUPPRESSED BECAUSE OFFICER HART'S APPROACH OF THE CAR AND INSERTION OF HIS HEAD IN THE PASSENGER WINDOW CONSTITUTED A SEIZURE WITHOUT REASONABLE SUSPICION

A police officer has made a seizure for the purposes of the Fourth Amendment if he "accosts an individual and restrains his freedom to walk away."  *Terry v. Ohio*, 392 U.S. 1, 16 (1968). Courts should determine whether a person has been seized based on whether, in light of the totality of the circumstances, "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  A key factor in determining whether a reasonable person would not have felt free to leave is whether the officers blocked her path.  As the Fifth Circuit held in *United States v. Berry*, "blocking an individual's path or otherwise intercepting him to prevent his progress in any way is a consideration of great, and probably decisive, significance."  670 F.2d 583, 597 (5th Cir. 1982); s*ee also United States v. Green*, 111 F.3d 515, 520 n.1 (7th Cir. 1997) (holding that officers effectuated a *Terry* stop of a parked car when they pulled

behind the defendant's car and blocked his exit).

Here, both Jenny Benzon and Nicole Mays testified at the hearing that Officer Hart parked very close to Ms. Mays' car, which prevented her from driving forward out of the area.[1]  Directly after parking his car, both Ms. Benzon and Officer Hart testified that Officer Hart approached the vehicle and stuck his head inside the passenger side window (Trans. 31: 14-15)(Trans. 31:14-15). Here, the parties part company; Officer Hart claims he told Ms. Mays that her car was missing a front license plate; all of the occupants of the car claim that Officer Hart's focus was on alcohol, and that he asked if anyone had been drinking inside the car.  All three witnesses who were in the car testified that Officer Hart approached the car and asked if anyone was drinking inside the car.  Each of the occupant witnesses directly denied that Officer Hart made any mention of a front license plate missing from the car.  Moreover, Nicole Mays and Jenny Benzon flatly denied that there was a front license plate sitting on the dashboard of the car.  There simply was no vehicle code violation here that justifies Officer Hart's seizure of the vehicle.

Officer Hart's action of parking so as to block Ms. Mays' movement forward, his subsequent approach of the vehicle, and his action of sticking his head inside the passenger car window constituted a seizure for Fourth Amendment purposes.  Although Ms. Mays physically could have backed her car up and left the area at that point, no reasonable person would feel free to leave after a uniformed, armed police officer parked directly in front of her automobile, approached her car, stuck his head inside the passenger side window, and demanded to know if she had been drinking.  It is not

---

[1] Officer Hart testified that he parked approximately 20 feet away from the vehicle.  Trans. 25:19-23.  However, Officer Hart also admitted that he didn't really recall much about these events other than what was written in the police report; he also couldn't explain exactly how close to the car he was.  *Id.* at 25:22-26: 8. Given Officer Hart's weak memory on the stop as a whole, Ms. Benzon and Ms. Mays' recollection of Officer Hart's vehicle location should control.

reasonable to expect Ms. Mays believed she could then back out of the area and drive away;  Officer

Hart's head was leaning into the window to talk to the occupants.  Trans. 31:14-15.  Had she backed

her car up, Ms. Mays would have injured the reporting officer – any backward movement that she

made would have resulted in the car window striking Officer Hart in the head.  Ms. Mays could have

been prosecuted for taking such action while a police officer's head was inside her vehicle.  No

reasonable person would have taken such an action.

This seizure violated the Fourth Amendment because at the moment Officer Hart stuck his

head inside the window, he had no reasonable suspicion that Ms. Mays or any of her passengers were

involved in criminal activity or had violated any traffic law or parking regulation.  In essence, Officer

Hart's actions are akin to a police officer effectuating a traffic stop for a vehicle code violation that

didn't exist.  As previously stated, the license plate was properly affixed to the front car.  As such,

Officer Hart's very reason for approaching the car is unjustified.  By his own written word, Officer

Hart claimed he approached the car because he saw that the car was missing a front license plate.

*See* Mays' Opening Motion, Exhibit A ("Hart Report").  He did not report any allegedly suspicious

behavior until after he had parked directly in front of Ms. Mays' car and approached it.

To the extent that Officer Hart claims that the occupants had "acted suspiciously" by merely

watching his egress around the car, (Trans. 24:24-25), and attempts to justify this activity as the basis

for the stop, the Ninth Circuit has foreclosed this justification.  *See United States v. Jimenez-Medina*,

173 F.3d 752, 755 (9th Cir. 1999)("A driver's preoccupation with a police vehicle following him is a

'quite natural reaction' and was held to be insufficient to justify an investigatory stop." (citing *United*

*States v. Robert L*, 874 *Montero-Camargo*, 208 F.3d at 1136 ("reliance upon 'suspicious' looks can

so easily devolve into a case of damned if you do, equally damned if you don't."); *see also Gonzalez-Riviera v. INS*, 22 F.3d 1441, 1446 (9th Cir. 1994)(eye contact or lack thereof cannot be considered in the reasonable suspicion calculus). As such, the two facts that Officer Hart claims justified his approach of Ms. Mays car either 1) did not exist, or 2) is utterly insufficient to establish reasonable suspicion under Ninth Circuit precedent.

In connection with the initial approach of the car, the questioning, and the sticking of his head inside the passenger window, Officer Hart further claims that his suspicions were aroused because passenger Jenny Benzon made a "furtive movement." Trans. 30:6-15. As a starting place, Ms. Benzon denied making any furtive movements as described by Officer Hart. Given Ms. Benzon's forthright testimony on other matters, including the fact that she essentially admitted on the stand that she was about to consume drugs when Officer Hart arrived, (Trans. 63:24-64:11) Ms. Benzon's testimony should be believed. Ms. Benzon is not indicted, and has no reason to lie at this point, either about the front license plate issue or whether or not she made a furtive movement. If Ms. Benzon was a liar, she would have denied knowledge about the drugs and contraband located in the car.

Furthermore, Ms. Benzon's testimony is backed up by Mr. McNatt, who claims that Ms. Benzon did not make any such movement. Her testimony is further credited by reason and common sense. If Ms. Benzon had made a "furtive movement" to hide something from Officer Hart, it is logical that she would have attempted to hide the bottle cap and the lighter that Officer Hart now claims were on the dashboard. All told, it is not clear from the record what Ms. Benzon supposedly "hid" by making the furtive movement Officer Hart claims she made. The heroin itself was located

under Ms. Benzon's rear end, on the seat of the car. Trans. 35:11-18. "Turning at the waist and bending" would not be required to hide heroin under one's rear end.

Assuming, *arguendo*, that the Court finds that Ms. Benzon made a "furtive movement," this was insufficient to establish reasonable suspicion for an officer to approach a parked car and stick his head inside the passenger car window to interrogate the occupants. Furtive movements constitute reasonable suspicion only when considered in conjunction with other suspicious activity. *See, e.g.*, *United States v. Malone*, 886 F.2d 1162 (9th Cir. 1989) (holding that officer's observation that defendant was making furtive glances, in addition to wearing gang colors, traveling to city known to supply cocaine, traveling on airline favored by gang members, and carrying only shoe bag for three-day stay constituted reasonable suspicion). Here, there was no suspicious activity in conjunction with any alleged "furtive movement" of Ms. Benzon. Moreover, at least one district court has found that a "furtive movement" described by an officer as indicative of hiding narcotics was insufficient to establish reasonable suspicion. *See Washington v. Gilmore*, 1998 U.S. Dist. LEXIS 17309, at *21-22 (N.D. C.A. October 30, 1998). Assuming such a movement occurred, it was insufficient to justify the seizure of Ms. Mays' vehicle. The evidence procured from the unlawful stop must be suppressed.

**II.    ALL EVIDENCE AND STATEMENTS MUST BE SUPPRESSED BECAUSE THE OFFICERS EFFECTUATED AN UNLAWFUL SEIZURE BY ORDERING MS. BENZON OUT OF THE CAR**

**A.    Ms. Mays Was Seized When Ms. Benzon Was Ordered Out of the Car Because Under the Circumstances, No Reasonable Person Would Feel Free to Leave**

Even if the Court determines that Ms. Mays was not stopped in violation of the Fourth

Amendment when Officer Hart stuck his head inside Ms. Mays' passenger window, the evidence must be suppressed because the officers effectuated an unlawful seizure of Ms. Mays when they ordered Ms. Benzon out of the car.  Ordering an individual out of a parked car constitutes a seizure for the purposes of the Fourth Amendment.  *See United States v. Pajari*, 715 F.2d 1378, 1381 (8th Cir. 1983).  When a passenger is seized by being ordered out of a car, the driver is also seized because a reasonable driver would not feel free to leave when an officer has ordered the driver's passenger out of the car.  *See Florida v. Bostick,* 501 U.S. 429, 439 (1991); s*ee also Brendlin v. California*, 127 S. Ct. 2400, 2407 (2007) (holding that a passenger has standing to challenge an illegal stop because the passenger will "expect to be subject to some scrutiny" even when the officer's attention is directed at the driver).

Ms. Mays was seized within the meaning of the Fourth Amendment when Officer Hart ordered Ms. Benzon out of the car, allegedly based on his view non-contraband items, such as a bottle cap, water and a lighter.  By ordering Ms. Benzon out of the car, Officer Hart exhibited precisely the type of behavior that, under *Bostick*, would make a reasonable driver assume she could not leave the car.  Even though Officer Hart directed his order at Ms. Benzon, Ms. Mays felt "subject to suspicion owing to close association" and did not feel free to leave.  *See Brendlind,* 127 S.Ct. At 2407.  Officer Hart therefore seized Ms. Mays when he ordered her passenger out of the car.

**B.      The Seizure Was Unlawful Because Officer Hart Did Not Have Reasonable Suspicion of Criminal Activity**

According to Officer Hart, "after we established that they could park there and that I mentioned about the front plate not being permanently affixed to the front end, is when I saw the stuff, the bottle cap and the Bic lighter on the dashboard.  That's when I asked the front seat

passenger to step out of the vehicle." Trans. 31:24-32:4. As such, it is clear that Officer Hart only saw the bottle cap and the lighter after he had seized Ms. Mays by sticking his head inside the passenger side window. Ms. Benzon disagrees with Officer Hart's observations; she claims that the bottle cap was located in the middle console of the car. Trans. 53:19-22. This would make sense, as Officer Hart only saw the item after he stuck his head inside the passenger side window. Trans. 31:24-32:4. As such, this Court should accept Ms. Benzon's version of the facts; particularly when considering that Officer Hart's testimony, as a whole, doesn't make sense; most likely as a result of faulty memory. If Ms. Benzon had made a "furtive movement" to hide something, why would she have left a bottle cap with water and a lighter on the dashboard?

According to Officer Hart, bottle caps are used to store small amounts of water that are then transferred to spoons, as are thus "storage containers." Trans. 33:6-14. The only connection Officer Hart testified to regarding the bottle cap and narcotics use is that bottle caps are sometimes used to transport water to spoons. Id. at 34:1-2. Notably, however, at the time Officer Hart saw the bottle cap, he did not see any spoons; he only allegedly saw a Bic lighter. In addition to Officer Hart's explanation for these items, he concurred on cross examination that these items also have perfectly legitimate uses. These two innocuous items – a cigarette lighter and a water bottle cap in the center console of the car, do not in of themselves give rise to any inference of criminal misdoing. Bottle caps are common items in cars, as are lighters. Counsel for Ms. Mays has not been able to locate any Ninth Circuit cases on point that provide that a police officer's observations of a bottle cap and a lighter in an automobile provide sufficient basis for an investigatory stop. There are too many innocuous explanations for such items to be present in automobiles for this Court to find that these items, standing alone, provided a basis for the officer to pull Ms. Benzon out of Ms. Mays'

1  automobile.

2      Moreover, it is clear that, had Officer Hart not stuck his head inside the passenger side

3  window, he wouldn't have been able to see the bottle cap filled with water to begin with. As such,

4  Officer Hart's initial unlawful seizure of Ms. Mays' vehicle is the predicate event that led to the

5  detection of the bottle cap, at the very least. Ms. Benzon's testimony that the bottle cap at issue was

6  located in the center console of the car further supports Ms. Mays' arguments that Officer Hart's

7  action sticking his head inside the passenger windows was a seizure; by doing so, he further invaded

8  Ms. Mays' right to privacy in her car, far beyond what was necessary for a typical consensual

9  questioning. Clearly, Officer Hart stuck his head inside the window to inspect the car for

10  contraband; this action went beyond the permissible boundaries of a consensual questioning and

11  violated Ms. Mays' Fourth Amendment rights. The evidence located in the car that the government

12  intends to use against her at trial should accordingly be suppressed.

13

14  \\

15  \\

16  \\

17  \\

18  \\

19  \\

20

21

22

23

24

25

26

1

**CONCLUSION**

2

For the foregoing reasons, Ms. Mays respectfully requests that this Court suppress all

3

evidence and statements arising from her illegal detention, search, seizure, and arrest, occurring in

4

violation of the Fourth Amendment.

5

6     Dated: December 7, 2007

7                                        Respectfully submitted,

8                                        BARRY J. PORTMAN
                                         Federal Public Defender
9

10                                              /S/

11                                       _____

12                                       ELIZABETH M. FALK
                                         Assistant Federal Public Defender
13

14

15

16

17

18

19

20     _____

21

22

23

24

25

26