Exhibit A

```
1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3

4  THE UNITED STATES OF AMERICA,  )         COPY

5                    PLAINTIFF,)

6  VERSUS                        )    CASE NO. CR07-0295EDL

7                                )    NOVEMBER 20, 2007

8  NICOLE MAYS,                   )    SAN FRANCISCO, CALIFORNIA

9                    DEFENDANT.)

10 _____)

11          BEFORE THE HONORABLE ELIZABETH D. LAPORTE

12         UNITED STATES DISTRICT COURT MAGISTRATE

13 APPEARANCES:

14 FOR THE GOVERNMENT:    SCOTT N. SCHOOLS
                          UNITED STATES ATTORNEY
15                        BY:  JAYLYN WANG
                          WENDY THOMAS
16                        ASSISTANT UNITED STATES ATTORNEY
                          450 GOLDEN GATE AVENUE
17                        SAN FRANCISCO, CALIFORNIA 94102

18
   FOR THE DEFENDANT:     OFFICE OF THE FEDERAL PUBLIC DEFENDER
19                        BY:  ELIZABETH FALK
                          ASSISTANT FEDERAL PUBLIC DEFENDER
20                        450 GOLDEN GATE AVENUE
                          SAN FRANCISCO, CALIFORNIA 94102
21

22

23

24 REPORTED BY:      JUANITA GONZALEZ

25                   CSR NO. 3003
```

```
 1  GOVERNMENT WITNESSES:   DIRECT   CROSS   REDIRECT   RE-CROSS

 2  THOMAS JAMES HART         2(W)    15(F)    37(W)

 3  THOMAS JAMES HART(RECALLED) EXAMINATION BY MS. FALK @ PAGE 129

 4

 5  DEFENSE WITNESSES:

 6  JENNY LOUISE BENZON       44(F)   57(W)    64(F)

 7  CHRISTOPHER MC NATT       67(F)   75(W)    85(F)

 8  JOHN DILLON SULLIVAN      86(F)   90(W)

 9  CARMELA PEREZ             91(F)   94(W)

10  NICOLE LEA MAYS           97(F)  107(W)   123(F)   123(W)

11

12                      E X H I B I T S

13                                      MARKED    ADMITTED

14  GOVERNMENT EXHIBIT 1    1-PAGE PHOTOGRAPH    4        4

15

16  DEFENSE EXHIBITS:

17  A  DIAGRAM                            24        24

18  B  POLICE REPORT                      27

19  C  DIAGRAM                            48        70

20  D  CERT. COPY OF DMV RECORD           90        91

21  E  DIAGRAM                           103

22

23

24

25
```

1    THE CLERK:  CALLING CRIMINAL 07-0295, UNITED STATES OF

2 AMERICA VERSUS NICOLE MAYS.

3    THE COURT:  YOUR APPEARANCES, PLEASE

4    MS. WANG:  GOOD AFTERNOON.  JAYLYN WANG FOR THE UNITED

5 STATES.  ALSO PRESENT IS WENDY THOMAS.

6    MS. FALK:  ELIZABETH FALK ON BEHALF OF NICOLE MAYS, WHO

7 IS PRESENT.

8    THE COURT:  ALL RIGHT.  SO I JUST GOT TODAY THE LIST OF

9 WITNESSES THAT YOU'RE PROPOSING, AND I THINK THERE WAS A

10 DOCUMENT THAT YOU HAD.

11    MS. FALK:  THAT'S RIGHT.  THERE IS JUST A ONE-PAGE

12 EXHIBIT I AM ANTICIPATING.  I HAVE A CERTIFIED COPY FROM THE

13 DMV.

14    THE COURT:  YOU SHOWED THE OTHER SIDE?

15    MS. FALK:  I HAVE.

16    THE COURT:  ANY OBJECTION?

17    MS. WANG:  NO, YOUR HONOR.  I BELIEVE THE GOVERNMENT

18 HAS ONE WITNESS.

19    THE COURT:  SO WHAT ORDER DID YOU WANT TO PROCEED?

20    MS. FALK:  SINCE IT'S GOVERNMENT'S BURDEN OF PROOF, I

21 WAS GOING TO PROPOSE THE GOVERNMENT PRESENT ITS WITNESS FIRST.

22 SOME OF MINE WILL BE VERY SHORT.

23    THE COURT:  ANY OBJECTION?

24    MS. WANG:  NO, YOUR HONOR.

25    THE COURT:  GO AHEAD.

1          MS. WANG:  THE GOVERNMENT CALLS SERGEANT HART.

2          THE CLERK: YOU DO SOLEMNLY SWEAR OR AFFIRM THAT THE

3    TESTIMONY YOU SHALL GIVE IN THE CAUSE NOW PENDING BEFORE THIS

4    COURT, SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE

5    TRUTH, SO HELP YOU GOD.

6          THE WITNESS:  YES, I DO

7

8                    THOMAS JAMES HART,

9    CALLED AS A WITNESS BY THE GOVERNMENT, WAS DULY SWORN AND

10   TESTIFIED AS FOLLOWS:

11         THE CLERK:  HAVE A SEAT.  STATE AND SPELL YOUR FIRST

12   AND LAST NAME, FOR THE RECORD.

13         THE WITNESS:  THOMAS JAMES HART, H-A-R-T.

14                    DIRECT EXAMINATION

15   BY MS. WANG:

16   Q.   GOOD AFTERNOON.  SERGEANT HART, WHERE WERE YOU EMPLOYED ON

17   MARCH 18, 2007?

18   A.   UNITED STATES PARK POLICE, SAN FRANCISCO FIELD OFFICE,

19   CRISSY FIELD.

20   Q.   WHAT IS YOUR POSITION WITH THE PARK POLICE?

21   A.   I AM A SERGEANT, PATROL DIVISION.

22   Q.   HOW LONG HAVE YOU BEEN EMPLOYED WITH THE U.S. PARK POLICE?

23   A.   ALMOST 18 YEARS.

24   Q.   HOW LONG HAVE YOU HAD THE POSITION OF AGENT WITH THAT

25   AGENCY?

1  A.    EIGHT YEARS.

2  Q.    WHAT IS YOUR BACKGROUND, TRAINING, AND EXPERIENCE IN THE

3  AREA OF NARCOTICS?

4  A.    EXTENSIVE.   I HAVE MADE OVER 400, 500 NARCOTICS CASES,.

5  200 ARRESTS, TESTIFIED AS AN EXPERT IN STATE OF CALIFORNIA

6  SUPERIOR COURT AND ALSO MARYLAND STATE COURT AS AN EXPERT IN THE

7  FIELD OF NARCOTICS.

8  Q.    ARE YOU FAMILIAR WITH NARCOTICS PARAPHERNALIA, THE

9  DIFFERENT WAYS NARCOTICS ARE INJECTED?

10 A.    YES.

11 Q.    IS THAT BASED ON THE BACKGROUND, TRAINING, AND EXPERIENCE

12 AS YOU PROVIDED?

13 A.    THAT'S CORRECT.

14 Q.    ON MARCH 18, 2007, WERE YOU ON DUTY?

15 A.    YES.

16 Q.    AND WERE YOU IN A MARKED PATROL VEHICLE?

17 A.    YES.

18 Q.    WERE YOU IN UNIFORM LIKE YOU ARE TODAY?

19 A.    NOT EXACTLY LIKE TODAY, NO.

20 Q.    YOU WERE IN UNIFORM?

21 A.    I WAS IN THE U.S. PARK POLICE UNIFORM.

22 Q.    WERE YOU ALONE, OR WITH A PARTNER THAT DAY?

23 A.    BY MYSELF.

24 Q.    AND AT APPROXIMATELY 1:50 P.M. ON THAT DATE, WHERE WERE YOU

25 EXACTLY?

```
 1  A.    I WAS IN AN AREA KNOWN AS CRISSY FIELD EAST BEACH, WHICH IS

 2  ON THE NORTHEAST SIDE OF THE PRESIDIO, SAN FRANCISCO.

 3  Q.    WERE THERE ANY OTHER POLICE VEHICLES AT CRISSY FIELD AT

 4  THAT TIME?

 5  A.    I DON'T BELIEVE SO, NO.

 6  Q.    ANY OTHER POLICE OFFICERS THERE AT THAT TIME?

 7  A.    NO.

 8  Q.    COULD YOU DESCRIBE THE LOCATION OF CRISSY FIELD GENERALLY?

 9  A.    CRISSY FIELD IS LIKE -- IN THE OPEN AREA TO THE NORTH IS

10  THE BEACH, AND THEN THE BAY.  CRISSY FIELD ITSELF IS AN OPEN

11  GRASSY AREA WITH SMALL DUNES FOR PEOPLE TO JOG AND RECREATE ON

12  THE BEACH.

13  Q.    I HAVE IN IN MY HAND A ONE-PAGE PHOTOGRAPH PREVIOUSLY

14  MARKED GOVERNMENT'S 1 FOR IDENTIFICATION.

15          MS. WANG:  I HAVE SHOWN DEFENSE COUNSEL.

16          MS. FALK:  I HAVE NO OBJECTION TO THE ADMISSION.

17          THE COURT:  ADMITTED.

18          MS. WANG:  YES.

19          THE COURT:  ADMITTED.  SHOW IT TO THE WITNESS.

20          MS. WANG:  YES.

21          MS. FALK:  FOR THE RECORD, IS THIS GOING TO BE MARKED

22  AND ADMITTED AS GOVERNMENT'S EXHIBIT 1?

23          MS. WANG:  IT'S BEEN MARKED.

24  BY MS. WANG:

25  Q.    DO YOU RECOGNIZE THE PHOTOGRAPH MARKED GOVERNMENT'S EXHIBIT
```

```
 1  1?
 2  A.   YES, I DO.
 3  Q.   WAS IS IT A PHOTOGRAPH OF?
 4  A.   IT'S A PHOTOGRAPH OF CRISSY FIELD, EAST BEACH, GRASSY PARK
 5  AREA THAT'S JUST WEST OF THE COMFORT STATION OR RESTROOM IN THAT
 6  AREA.
 7  Q.   DID YOU TAKE THAT PHOTOGRAPH?
 8  A.   YES.
 9  Q.   WHEN DID YOU TAKE THE PHOTOGRAPH?
10  A.   IT WAS LAST WEEK SOMETIME.
11  Q.   AND DOES THE PHOTOGRAPH -- IS THE PHOTOGRAPH A FAIR AND
12  ACCURATE REPRESENTATION OF HOW CRISSY FIELD LOOKED ON
13  MARCH 18, 2007?
14  A.   THAT WAS A SUNDAY.  I WOULD SUSPECT THERE WAS PROBABLY A
15  LOT MORE CARS.
16  Q.   OTHER THAN THE FACT THERE WERE MORE CARS ON THAT DATE, DOES
17  IT LOOK THE SAME?
18  A.   I WOULD SAY YES.
19  Q.   DID YOU PARK YOUR VEHICLE ON CRISSY FIELD AT ABOUT
20  1:50 P.M.?
21          THE COURT:  ARE YOU DONE WITH THAT?
22          MS. WANG:  I WOULD LIKE TO USE IT TO MARK PLACES OF --
23          THE COURT:  YOU HAVEN'T SHOWN IT TO ME YET.
24          MS. WANG:  SORRY, YOUR HONOR.
25          THE COURT:  I DON'T HAVE A COPY.
```

```
 1            MS. WANG:  SORRY, YOUR HONOR.

 2            THE COURT:  THANK YOU.

 3  BY MS. WANG:

 4  Q.   DID YOU PARK YOUR VEHICLE ON CRISSY FIELD?

 5  A.   YES.

 6  Q.   IF COULD YOU PLEASE PROVIDE OR PLACE AN "X" ON THE

 7  PHOTOGRAPH, GOVERNMENT EXHIBIT 1, WHERE YOU PARKED YOUR VEHICLE.

 8  A.    OKAY.  THIS IS APPROXIMATE, BEST OF MY RECOLLECTION.

 9  Q.   HAVE YOU MARKED IT WITH AN "X," WHERE YOUR VEHICLE WAS

10  PARKED?

11  A.   YES.

12  Q.   AND AT ABOUT 1:50 P.M., DID SOMETHING CATCH YOUR ATTENTION

13  ON CRISSY FIELD?

14  A.    YES.

15  Q.    WHAT CAUGHT YOUR ATTENTION?

16  A.   AS I WAS DRIVING AROUND, THERE IS A ROADWAY THAT GOES

17  AROUND THE WHOLE AREA LIKE A CIRCUMFERENCE.  AS I DROVE IN THE

18  AREA, ACTUALLY ON THE ROADWAY, I SAW A CAR PARKED AWAY FROM THE

19  OTHER CARS, AND AS I DROVE AROUND, THE OCCUPANTS KIND OF

20  FOLLOWED THE PATH OF MY CAR WITH THEIR HEAD, TURNED THEIR EYES

21  LIKE WATCHING ME.  THAN AS I CAME AROUND THE FRONT OF THE

22  VEHICLE, THEY STILL CONTINUED TO TRACK MY VEHICLE AND KIND OF

23  OBSERVE WHAT I WAS DOING IN A MARKED PATROL CAR, AND THAT'S WHEN

24  WHEN I PULLED INTO THE GRASSY AREA IN ORDER TO FURTHER

25  INVESTIGATE.
```

1  Q.    WAS THERE ANYTHING ABOUT THE VEHICLE ITSELF THAT CAUGHT

2  YOUR ATTENTION?

3  A.    THE VEHICLE WAS PARKED ON THE GRASS.   IT WAS NOT DISPLAYING

4  A FRONT LICENSE PLATE AS REQUIRED BY THE CALIFORNIA VEHICLE

5  CODE.

6  Q.    DID YOU SEE THE LICENSE PLATE, FRONT LICENSE PLATE,

7  ANYWHERE ON THE VEHICLE?

8  A.    NO.

9  Q.    IS THAT A VIOLATION OF THE CALIFORNIA VEHICLE CODE?

10 A.    THAT IS CORRECT, FOR THAT TYPE OF VEHICLE.

11 Q.    WAS THIS VEHICLE PARKED?

12 A.    YES.

13 Q.    COULD YOU PLEASE DRAW A "Y" ON GOVERNMENT EXHIBIT 1, WHERE

14 THIS VEHICLE WAS PARKED.

15        (THE WITNESS COMPLIES WITH COUNSEL'S REQUEST.)

16 Q.    ABOUT HOW FAR AWAY FROM THIS VEHICLE DID YOU PARK

17  YOUR VEHICLE?

18 A.    AGAIN, I'M GOING TO -- I CAN'T RECALL EXACTLY, BUT MAYBE

19 20, 25 FEET AWAY TO THE EAST OF IT.

20 Q.    AND AFTER YOU PARKED YOUR VEHICLE AND YOU NOTICED THERE WAS

21 NO FRONT LICENSE PLATE, DID YOU APPROACH THE VEHICLE?

22 A.    YES, I DID.   I EXITED MY CAR AND WALKED TOWARDS THE FRONT

23 OF THE RIGHT PASSENGER SIDE OF THE VEHICLE.

24 Q.    WERE YOU WITH ANYONE ELSE WHEN YOU APPROACHED THE VEHICLE?

25 A.    NO.

1  Q.    WERE ANY OTHER PATROL CARS IN THIS VICINITY AT THIS TIME?

2  A.    NO.

3  Q.    ANY OTHER POLICE OFFICERS IN THE VICINITY AT THIS TIME?

4  A.    NO.

5  Q.    WHAT WAS THE PURPOSE OF APPROACHING THE VEHICLE?

6  A.    TO SPEAK TO THEM ABOUT THE VEHICLE CODE VIOLATION 5200, NO

7  FRONT LICENSE PLATE.

8  Q.    AS YOU WERE APPROACHING THE VEHICLE, COULD YOU SEE THE

9  OCCUPANTS INSIDE THE VEHICLE?

10  A.    YES.

11  Q.    HOW MANY OCCUPANTS WERE THERE?

12  A.    THREE.

13  Q.    DO YOU SEE ANY OF THE OCCUPANTS THAT WERE IN THE VEHICLE IN

14  COURT HERE TODAY?

15  A.    I SEE THE DEFENDANT, MISS MAYS, AT DEFENSE TABLE, SITTING

16  IN THE BLACK AND WHITE STRIPED SHIRT.

17      MS. WANG:  INDICATING THE DEFENDANT.

18  BY MS. WANG:

19  Q.    WAS THE DEFENDANT SEATED IN THE VEHICLE?

20  A.    BEHIND THE DRIVER'S -- WELL -- DRIVER'S SEAT.

21  Q.    AS YOU WERE APPROACHING THE VEHICLE, WERE YOU WATCHING THE

22  OCCUPANTS?

23  A.    YES.

24  Q.    WHAT WERE THEY DOING?

25  A.    THEY WERE WATCHING ME.

1  Q.   DID YOU ACTUALLY SEE THE OCCUPANTS MAKING CONTACT WITH YOU?

2  A.   YES.

3  Q.   CAN YOU DESCRIBE THE DEMEANOR OF THE OCCUPANTS AFTER THEY

4  MADE EYE CONTACT WITH YOU?

5  A.   MISS MAYS JUST LOOKED, AND THERE WAS A MALE PASSENGER

6  SITTING IN BACK WATCHING ME.  THE FRONT SEAT PASSENGER, A

7  FEMALE, IMMEDIATELY, YOU KNOW, BENT VERY QUICKLY AND SUDDENLY AT

8  HER WAIST AND BENT DOWN.  MIGHT HAVE BEEN TO CONCEAL HERSELF

9  FROM A UNIFORMED POLICE OFFICER.

10 Q.   WHAT WAS IT ABOUT THE MOVEMENT THAT MADE YOU BELIEVE THAT

11 SHE WAS TRYING TO CONCEAL SOMETHING?

12 A.   VERY QUICK AND DELIBERATE, NOT A COMMON THING PEOPLE DO

13 WHEN POLICE OFFICERS WALK TOWARDS THEM, YOU KNOW, VEHICLES.

14 Q.   WHEN YOU GOT TO THE VEHICLE, DID THE DEFENDANT SAY ANYTHING

15 TO YOU?

16 A.   I DON'T RECALL TO ME.  MAY HAVE SAID SOMETHING ABOUT, "IS

17 IT OKAY TO PARK IN THIS AREA?" --  PARK IN THE GRASS,

18 SPECIFICALLY.

19 Q.   WHAT DID YOU TELL HER?

20 A.   THAT, WELL, IT'S OKAY TO PARK IN THE GRASS.

21 Q.   DID YOU TELL HER ANYTHING ABOUT HER LICENSE PLATE?

22 Q.   THAT THIS VEHICLE NEEDS --- TYPE OF VEHICLE -- NEEDS A

23 VEHICLE LICENSE PERMANENTLY AFFIXED TO THE FRONT OF THE CAR.

24 Q.   DID SHE SAY ANYTHING TO YOU ABOUT THE LICENSE PLATE AT THAT

25 TIME?

1  A.    I DON'T RECALL.

2  Q.    DID YOU NOTICE THE FRONT LICENSE PLATE ANYWHERE ON THE

3  VEHICLE WHEN YOU GOT TO THE VEHICLE?

4  A.    I THINK IT WAS ON THE DASHBOARD.

5  Q.    AND IS IT A VIOLATION OF THE VEHICLE CODE, CALIFORNIA

6  VEHICLE CODE, TO HAVE A LICENSE PLATE DISPLAYED ON THE

7  DASHBOARD?

8  A.    YES.

9  Q.    DID YOU NOTICE ANYTHING SUSPICIOUS WHILE AT THE VEHICLE

10 TALKING TO THE DEFENDANT ABOUT THE LICENSE PLATE?

11 A.    I NOTICED -- BEFORE I SPOKE, MADE CONTACT OR SPOKE, I SAW

12 THERE IS A BOTTLE CAP THAT'S COMMON FOR -- LIKE WATER BOTTLE OR

13 SODA THAT WAS UNDER THE DASHBOARD THAT CONTAINED A LITTLE BIT OF

14 WATER, AND THERE WAS ALSO A BIG STYLE -- LIKE A DISPOSAL STYLE

15 LIGHTER ALSO ON THE DASHBOARD.

16 Q.    IN YOUR PLAIN VIEW?

17 A.    YES.

18 Q.    WHAT WAS SUSPICIOUS ABOUT THESE ITEMS?

19 A.    THOSE ITEMS, IN MY TRAINING AND EXPERIENCE, ARE CONSISTENT

20 WITH USE OF CONTROLLED SUBSTANCES.

21        MS. FALK:  OBJECTION.  LACKS FOUNDATION.

22        THE COURT:  WELL, HE HAS GIVEN A FOUNDATION ABOUT HIS

23 EXTENSIVE TRAINING.  SEEMS YOU'RE GOING TO BE ABLE TO

24 CROSS-EXAMINE HIM ON THAT.

25        MS. FALK:  THAT'S FINE.  ALSO CONCLUSORY.  THANK YOU,

1  YOUR HONOR.

2  BY MS. WANG:

3  Q.    BASED ON YOUR BACKGROUND, TRAINING AND EXPERIENCE IN THE

4  AREA OF NARCOTICS, WHAT DID IT APPEAR THAT THE -- WHY DID YOU

5  FIND THE BOTTLE CAP AND THE WATER AND THE BIG LIGHTER

6  SUSPICIOUS?

7  A.    LIKE I STATED, A LOT THE CASES I HAVE MADE IN THE PAST

8  HAD USED -- IN THIS CASE, LIKE HEROIN, THIS IS PART OF A KIT OR

9  PART OF A PROCESS TO COOK OR TO USE HEROIN.

10  Q.    COULD YOU PLEASE EXPLAIN IN A LITTLE MORE DETAIL, BASED ON

11  YOUR BACKGROUND, TRAINING, AND EXPERIENCE, HOW A BOTTLE CAP WITH

12  WATER AND A BIG LIGHTER COULD BE USED TO INJEST NARCOTICS.

13  A.    A BOTTLE CAP IS A WAY TO KIND OF STORE OR KIND OF HOUSE A

14  SMALL AMOUNT OF WATER THAT WILL ULTIMATELY BE USED TO DISSOLVE

15  THE SUBSTANCE, IN THIS CASE, HEROIN.  AGAIN, TO HELP EXPEDITE

16  THE DISSOLVING OR MELTING, IF YOU WILL, IN THIS CASE, HEROIN.

17  YOU NEED A HEAT SOURCE.  A BIG-STYLE LIGHTER ARE EXTREMELY

18  COMMON FOR THAT PURPOSE.

19  Q.    AT SOME POINT DID YOU ASK THE PASSENGER TO GET OUT OF THE

20  VEHICLE.

21  A.    YES.

22  Q.    WHY DID YOU ASK THE PASSENGER TO GET OUT OF THE VEHICLE?

23  A.    AGAIN, BECAUSE OF THE MOVEMENTS SHE DID WHEN SHE SAW I WAS

24  APPROACHING THE VEHICLE.  SHE RECOGNIZED I WAS A POLICE OFFICER.

25  ALONG WITH THE PROXIMITY OF THE WATER BOTTLE, BOTTLE CAP WITH

1  THE WATER, BIG STYLE LIGHTER, I THOUGHT SHE WAS IN POSSESSION

2  OF, CONCEALING SOMETHING, EITHER A CONTROLLED SUBSTANCE OR

3  MAYBE -- CONCEALING SOME CONTROLLED SUBSTANCE OR EVEN POSSIBLY A

4  WEAPON.

5  Q.   AT THIS POINT WHEN YOU ASKED THE PASSENGER TO EXIT THE

6  VEHICLE, WERE YOU STILL THE ONLY OFFICER PRESENT?

7  A.   YES.

8  Q.   WAS YOUR PATROL VEHICLE THE ONLY PATROL VEHICLE IN THE

9  VICINITY?

10 A.   YES.

11 Q.   DID THE PASSENGER STEP OUT OF THE VEHICLE WHEN YOU ASKED

12 HER TO?

13 A.   YES, SHE DID.

14 Q.   WHAT, IF ANYTHING, DID YOU NOTICE AFTER THE PASSENGER

15 STEPPED OUT OF THE VEHICLE?

16 A.   IMMEDIATELY AFTER SHE STEPPED OUT, I SAW ON THE SEAT SHE

17 WAS WAS OCCUPYING, TWO SPOONS.  ONE OF THE SPOONS HAD A DARK

18 SUBSTANCE STILL AFFIXED TO THE BOTTOM OF THE SPOON, THE INSIDE

19 BOTTOM OF THE SPOON, IF YOU WILL, AND THERE WAS A SMALL, CLEAR

20 PLASTIC BINDLE OR SARAN-TYPE OF THING WHICH CONTAINED A DARK,

21 HARD SUBSTANCE THAT I IMMEDIATELY RECOGNIZED AS HEROIN.

22 Q.   DID YOU RECOGNIZE THE SUBSTANCE BASED ON YOUR BACKGROUND,

23 TRAINING, AND EXPERIENCE?

24 A.   YES.

25 Q.   WHAT DID YOU DO AFTER YOU NOTICED THE SUBSTANCE ON THE

1  PASSENGER SEAT?

2  A.    I ASKED AS ALL THREE OF THEM, THE OTHER TWO OCCUPANTS PLUS

3  THE INDIVIDUAL THAT STEPPED OUT OF THE VEHICLE, WHO IT BELONGED

4  TO.

5  Q.    DID ANY OF THE OCCUPANTS RESPOND?

6  A.    YES.

7  Q.    WHO RESPONDED?

8  A.    NICOLE MAYS PAUSED AND SHE RESPONDED, "IT'S MINE".

9  Q.    WHAT HAPPENED AFTER SHE SAID "IT'S MINE"?

10  A.    I HAD HER STEP FROM THE VEHICLE.

11  Q.    AND AT THIS POINT WERE YOU STILL THE ONLY OFFICER ON THE

12  SCENE?

13  A.    I THINK SO.  I KNOW THERE WAS AN OFFICER COMING, BUT I

14  DON'T KNOW WHEN HE ARRIVED, PRECISELY.

15  Q.    OKAY.  AND WHEN WAS THE FIRST TIME -- WHAT WAS GOING ON

16  WHEN THE OTHER OFFICER ARRIVED ON THE SCENE?  IN OTHER WORDS,

17  WAS THE DEFENDANT OUT OF THE CAR ALREADY?

18  A.    I THINK SO.

19  Q.    HAD YOU ALREADY FOUND WHAT APPEARED TO YOU TO BE TAR

20  HEROIN?

21  A.    YES.

22  Q.    AND HOW MANY OTHER OFFICERS ARRIVED ON THE SCENE?

23  A.    I BELIEVE IT WAS ONE ADDITIONAL OFFICER, OFFICER WHALEN.

24  Q.    AND WHAT DID YOU DO AFTER THE DEFENDANT WAS OUT OF THE CAR?

25  A.    WE -- SHE AND I WALKED TO THE BACK OF THE CAR AND WE

1  TALKED ABOUT IT, ABOUT THEM HAVING POSSESSION OF A CONTROLLED

2  SUBSTANCE LIKE THAT ON A FEDERAL PROPERTY; AND SHE GAVE ME

3  HER I.D.  I RAN HER I.D. THROUGH OUR COMMUNICATIONS BRANCH FOR

4  ANY WARRANTS.

5  Q.   HOW DID THAT RETURN?

6  A.   SHE RETURNED WITH TWO ACTIVE WARRANTS OUT OF THE CITY AND

7  COUNTY OF SAN FRANCISCO.

8  Q.   AND AT SOME POINT DID YOU ARREST THE DEFENDANT?

9  A.   YEAH.  AFTER IT CAME BACK SHE WAS WANTED, SHE WAS PLACED IN

10 CUSTODY.

11 Q.   AND WAS HER VEHICLE THEN SEARCHED INCIDENT TO THE ARREST?

12 A.   YES.

13 Q.   AND WHAT DID YOU FIND WHEN YOU SEARCHED THE VEHICLE?

14 A.   UNDER THE PASSENGER FRONT SEAT THERE WAS A BAGGIE, A BAG

15 THAT CONTAINED A LOT OF PLASTIC, NEW PLASTIC SYRINGES.

16 Q.   WAS ANYTHING ELSE RECOVERED?

17 A.   I DON'T THINK SO.

18 Q.   NO FURTHER QUESTIONS.

19        THE COURT:  MS. FALK.

20        MS. FALK:  MAY I SEE THE DIAGRAM THAT OFFICER HART

21 DREW?

22        THE COURT:  YES.

23        MS. FALK:  I APPRECIATE THAT.

24                        CROSS-EXAMINATION

25 BY MS. FALK:

1  Q.   GOOD AFTERNOON, OFFICER HART.  I AM ELIZABETH FALK WITH THE

2  FEDERAL PUBLIC DEFENDER'S OFFICE.  I REPRESENT NICOLE MAYS.

3       YOU WERE IN A MARKED POLICE VEHICLE THAT DAY?

4  A.   YES.

5  Q.   IN UNIFORM?

6  A.   YES.

7  Q.   ARMED?

8  A.   CORRECT.

9  Q.   AND YOU WERE DRIVING IN CRISSY FIELD?

10 A.   CORRECT.

11 Q.   HAD YOU BEEN ASSIGNED THAT PARTICULAR BEAT THAT DAY?

12 A.   YOU KNOW, I'M THE PATROL SUPERVISOR.  I DON'T HAVE A BEAT.

13 I GO WHEREVER I WANT WITHIN THE JURISDICTION.

14 Q.   SO IN THE ENTIRE PRESIDIO?

15 A.   YES.

16 Q.   HAD YOU PASSED THROUGH CRISSY FIELD EARLIER THAT DAY?

17 A.   I CAN'T RECALL.  MOST LIKELY, BUT I CAN'T RECALL.

18 Q.   DO YOU REMEMBER WHAT TIME YOU GOT TO CRISSY FIELD ON

19 MARCH 18, 2007?

20 A.   MY ONLY RECOLLECTION ON THAT WOULD BE FROM THE REPORT,

21 DISPATCH LOG.

22 Q.   SO IF YOU NEED TO REFER -- YOU DID, OF COURSE, WRITE A

23 REPORT IN THIS CASE.

24 A.   RIGHT.

25 Q.   SO YOU DON'T RECALL, INDEPENDENTLY OF LOOKING AT YOUR

1   REPORT, WHAT SAME YOU GOT TO CRISSY FIELD THAT DAY?

2   A.   NO.   I MEAN, 1356, ABOUT 1350, PROBABLY.

3   Q.   ARE YOU TESTIFYING TO THAT BECAUSE YO JUST LOOKED AT YOUR

4   REPORT AND IT SAID THAT WAS THE TIME?

5   A.   REFRESHING MY MEMORY.

6   Q.   YOU WEREN'T THERE MORE THAN A FEW MINUTES PRIOR TO SEEING

7   MISS MAYS' VEHICLE?

8   A.    CRISSY FIELD IS A LARGE AREA.   I DON'T KNOW WHERE I WAS IN

9   PART OF THAT CONTACT.   I HAD JUST GOT IN THE -- OR CAME INTO THE

10  AREA AND STOPPED.   THAT, I DON'T RECALL.

11  Q.   WHERE WERE YOU COMING FROM BEFORE YOU GOT TO THIS LOCATION?

12  A.   THAT, I CAN'T RECALL.   JUST ON ACTIVE PATROL.

13  Q.   WERE YOU HEADING SOMEWHERE IN PARTICULAR WHEN YOU NOTICED

14  MISS MAYS' CAR?

15  A.   NO.

16  Q.   WHAT DIRECTION WERE YOU DRIVING FROM?

17  A.   I WAS PROBABLY DRIVING -- WHEN I FIRST MADE CONTACT OR I

18  OBSERVED THAT VEHICLE, PROBABLY DRIVING WESTBOUND.

19  Q.   WESTBOUND.   ARE THERE ROADS IN CRISSY FIELD?

20  A.   YES.

21  Q.   WHAT DIRECTION DO THE ROADS GO, NORTH-SOUTH, OR EAST-WEST?

22  A.   ALL DIRECTIONS.

23  Q.   THEY GO ALL DIRECTIONS.   SO THERE IS ROAD AND THEN GRASS

24  AND ADDITIONAL ROADS?

25  A.   RIGHT.

```
 1  Q.    WERE YOU DRIVING ON THE ROAD?

 2  A.    YES.

 3  Q.    AND YOU WERE HEADING WEST?

 4  A.    RIGHT.

 5  Q.    WHERE WAS THE BEACH RELATIVE TO YOUR CAR WHEN YOU WERE

 6  HEADING WEST?

 7          THE COURT:  CAN I ASK WHAT THE POINT OF THIS IS?

 8          MS. FALK:  IT'S VERY IMPORTANT WHAT DIRECTION, YOUR

 9  HONOR.  HOW HE WAS APPROACHING THE CAR IS RELEVANT TO WHAT HE

10  SAW.

11          THE COURT:  ALL RIGHT.

12  BY MS. FALK:

13  Q.    WAS THE BEACH ON YOUR RIGHT?

14  A.    TO MY RIGHT, CORRECT.

15  Q.    HOW FAR AWAY WAS MISS MAYS' CAR FROM YOU WHEN YOU FIRST

16  NOTICED IT?

17  A.    JUST A GUESS, MAYBE 100 FEET.

18  Q.    SORRY.  WHEN YOU SAY "JUST A GUESS--"

19  A.    MAYBE 100 FEET.

20  Q.    WHAT COLOR WAS THE CAR?

21  A.    AGAIN, I REFRESH MY MEMORY.  I BELIEVE IT WAS GRAY.  I GOT

22  THAT FROM THE REPORT.

23  Q.    YOU HAVE NO INDEPENDENT MEMORY OF THAT?

24  A.    NO.

25  Q.    COULD YOU TELL THE SEXES OF THE PASSENGERS WHEN YOU FIRST
```

1  SAW THE CAR?

2  A.   YES, I THINK SO.

3  Q.   FROM 100 FEET?

4  A.   YEAH.

5        MS. FALK:  YOUR HONOR, I THINK AT THIS POINT A LARGER

6  DIAGRAM THAN THIS WOULD BE HELPFUL, SO I'M GOING TO ASK THE

7  OFFICER TO ACTUALLY DRAW WHERE HE WAS WHEN HE FIRST -- WITH THE

8  COURT'S PERMISSION.

9        THE COURT:  ALL RIGHT.

10       MS. FALK:  I'D ASK -- YOU KNOW THE AREA BETTER THAN

11  ANYONE.  SO WEST IS OVER HERE.  AND JUST FOR THE RECORD, WEST

12  WOULD BE THE RIGHT-HAND SIDE OF THE PAPER.  EAST WOULD BE THE

13  LEFT-HAND SIDE.  NORTH WOULD BE THE TOP, AND SOUTH WOULD BE THE

14  BOTTOM.

15       MS. WANG:  OBJECTION.  SHE JUST SAID "LEFT," AND THEN

16  PLACED HER HAND ON THE RIGHT-HAND SIDE.

17       THE COURT:  LEFT IS WEST?

18       MS. FALK:  LEFT IS WEST, RIGHT IS EAST.

19       THE COURT:   OKAY.

20       THE WITNESS:  OKAY.  I'LL CALL THIS -- THIS IS THE BAY,

21  AND THERE IS A ROADWAY THAT COMES IN LIKE THIS, GOES AROUND,

22  AROUND, AND THEN THERE IS A -- THE RESTROOM, THE COMFORT STATION

23  I REFERRED TO IS LIKE HERE, AND THERE IS ANOTHER ROADWAY THAT

24  COMES LIKE THIS, AND THIS IS A ROADWAY AS WELL, A LARGE ROAD

25  THAT GOES LIKE THIS, AND THIS ROAD COMES IN LIKE THIS -- SORRY.

1  DISCARD THAT.  THIS ROAD INTERTWINES, GOES LIKE THIS, THOSE TWO

2  ROADS CONNECT, THOSE CONNECT, AND THIS ROAD IS LIKE AN OUTBOUND

3  ROAD THAT GOES TO MASON ROAD.

4          I BELIEVE WHEN I APPROACHED THIS AREA -- AGAIN, THAT'S

5  WEST, NORTH, EAST, AND SOUTH.  I CAME IN.  I APPROACHED FROM

6  THE -- TRAVELING WESTBOUND.  THE DEFENDANT'S VEHICLE IS IN THIS

7  AREA HERE, AND I BELIEVE I CAME IN THIS DIRECTION.  THIS COMFORT

8  STATION, AGAIN, IS MAYBE 100 FEET FROM HERE TO THERE, MAYBE 100

9  FEET.  SO I CAME PAST THIS BUILDING.  AS SOON AS I CAME PAST

10 THAT BUILDING, I SAW THE VEHICLE, BECAUSE ALL OF THE VEHICLES

11 PARK LIKE IN THIS AREA.  AS I ROLLED IN ALONG THE ROAD, CAME IN

12 HERE.  MY APPROACH WAS THERE.

13 BY MS. FALK:

14 Q.  CAN YOU INDICATE WITH ARROWS WHAT YOUR APPROACH WAS SO WE

15 CAN DISTINGUISH ON THE MAP.

16          (THE WITNESS COMPLIES WITH COUNSEL'S REQUEST)

17 THANK YOU.  YOU CAN RETURN -- BEFORE THAT, ARE THERE ANY TREES

18 IN THIS AREA?

19 A.  YES.  I KNOW THERE IS ONE FOR SURE THAT'S REALLY LARGE,

20 LIKE IN HERE.

21 Q.  THANK YOU.

22          THE COURT:  WHICH ON THERE IS THE COMFORT STATION?

23          THE WITNESS:  THE SQUARE IN THE MIDDLE.

24          MS. FALK:  FOR THE RECORD, WITH THE COURT'S PERMISSION,

25 I MARKED THE COMFORT STATION WITH A "C".  I'LL MARK WHERE

1  OFFICER HART INDICATED MISS MAYS' CAR IS WITH AN "M," AND WHERE

2  HIS CAR CAME TO REST WITH A "PP".  AND THEN I'LL JUST REINFORCE

3  THE ARROWS THAT HE HIMSELF DREW AND, FOR THE RECORD, NOTE THAT

4  THE RED AREAS INDICATE ROADS AND THE SQUIGGLEY LINES ON THE TOP

5  INDICATES THE BAY.

6  BY MS. FALK:

7  Q.    SO, OFFICER HART, WHICH DIRECTION WAS MISS MAYS' CAR

8  FACING?

9  A.    NORTH, NORTHEAST.

10 Q.    FACING THE BAY?

11 A.    YES.

12 Q.    WHAT CAUSED YOU TO TURN AROUND AND APPROACH THIS PARTICULAR

13 VEHICLE?

14 A.    AGAIN, AS I CAME IN AND MADE -- GOING WEST -- THEN

15 ULTLIMATELY MADE A RIGHT GOING NORTH, THEIR HEADS AND THEIR

16 NECKS TURNED TOWARDS ME AND TRACKED ME AS I CAME AROUND THAT

17 LOOP THERE.

18 Q.    SO IS IT APPROPRIATE THAT --  IT'S YOUR TESTIMONY THEN THAT

19 AT THE MARKING OF THE FIRST ARROW, YOU NOTICED THE OCCUPANTS OF

20 THE CAR LOOKING AT YOU?

21 A.    UH -- POSSIBLY.

22 Q.    AT AREA ONE.  WHAT ABOUT AT AREA TWO?

23 A.    TWO WOULD BE LIKE THAT WHOLE STRUCTURE, YOU KNOW, BECAUSE I

24 KEPT A VIGIL ON THEM ALL THE WAY THROUGH GOING WEST, THEN ALSO

25 GOING NORTH, AND THEN GOING EAST.

```
 1  Q.    SO IT'S YOUR TESTIMONY THAT WHILE YOU WERE DRIVING AROUND
 2  THIS ROAD, AS INDICATED BY THE ARROWS, THAT YOU WERE WATCHING
 3  THE OCCUPANTS OF THE CAR?
 4  A.    BEST AS POSSIBLE, YES.
 5  Q.    AT WHAT POINT DID YOU DECIDE TO APPROACH THE CAR?
 6  A.    WHEN I CAME AROUND THE CORNER THERE AND MADE MY RIGHT
 7  HAND -- RIGHT THERE.
 8        MS. FALK:  I'LL MARK THAT WITH A STAR, A BLUE STAR, FOR
 9  THE RECORD.
10  BY MS. FALK:
11  Q.    AT THAT POINT, THAT'S WHEN YOU DECIDED TO APPROACH THE
12  VEHICLE?
13  A.    THAT'S RIGHT.
14  Q.    THERE WASN'T ANYTHING ILLEGAL ABOUT THE WAY THE CAR WAS
15  PARKED, RIGHT?
16  A.    NO.
17  Q.    DID YOU SEE MISS MAYS WALKING AT ANY POINT, OR ANY OF THE
18  OCCUPANTS WALKING?
19  A.    NOT THAT I RECALL.
20  Q.    AND AT WHAT POINT DID YOU NOTICE THE LICENSE PLATE?
21  A.    PROBABLY HALFWAY BETWEEN THE STAR AND WHERE MY POSITION IS,
22  MY FINAL POSITION IS.
23        MS. FALK:  I AM GOING TO MARK IT WITH A BLACK STAR.
24  BY MS. FALK:
25  Q.    IT WAS AT THIS POINT THAT YOU NOTICED THE LICENSE PLATE.
```

1  IS THAT FAIR?

2  A.    THAT'S FAIR.

3        THE COURT:  I THINK YOU SHOULD DISTINGUISH BETWEEN THE

4  TWO STARS.  THEY BOTH LOOK THE SAME.

5        MS. FALK:  FOR THE RECORD, THE BLACK STAR, WHICH IS

6  IN-BETWEEN THE BLUE STAR AND "PP," IS WHERE OFFICER HART IS

7  AGREEING WITH ME THAT HE FIRST NOTICED THE LICENSE PLATE;

8  WHEREAS THE BLUE STAR IS WHEN HE DECIDED TO APPROACH THE CAR.

9        THE COURT:  YOU CIRCLED --

10        MS. FALK:  I CIRCLED THE BLACK STAR.

11        WITH THE COURT'S PERMISSION, I WOULD LIKE TO MARK THIS

12  DIAGRAM AS DEFENSE EXHIBIT "A".

13        THE COURT:  ANY OBJECTION?

14        MS. WANG:  NO.

15        THE COURT:  ARE YOU MOVING IT INTO ADMISSION?

16        MS. FALK:  YES, YOUR HONOR.

17        ANY OBJECTION TO THE ADMISSION?

18        MS. WANG:  NO, YOUR HONOR. IT IS WHAT IT IS.

19        THE COURT:  ADMITTED.

20  BY MS. FALK:

21  Q.    SO, OFFICER HART, YOU DIDN'T DECIDE TO APPROACH THIS CAR

22  BECAUSE OF ANY LICENSE PLATE, RIGHT?  YOU MADE THAT DECISION

23  AFTER YOU HAD DECIDED YOU WERE GOING TO APPROACH THIS CAR.

24  A.    WELL, I HAD THREE OCCUPANTS IN THE CAR THAT WERE ACTING

25  SUSPICIOUSLY TO A UNIFORMED POLICE OFFICER IN A MARKED CAR, AND

```
 1  THAT AROSE MY SUSPICION AS TO THOSE OCCUPANTS IN THAT CAR, AND

 2  SO I WAS GOING TO GO AND CHECK, PROBABLY MAKE CONTACT WITH THEM,

 3  DO A CONSENSUAL CONTACT WITH THEM AS BEST I CAN CONCERNING

 4  PUBLIC PROPERTY.  SO AS I MADE MY APPROACH TO FURTHER MY  -- WHY

 5  THEY HAD ACTED SO SUSPICIOUSLY TO A POLICEMAN PASSING BY AROSE

 6  MY SUSPICION TO MAKE CONTACT.

 7  Q.   AND IT'S YOUR TESTIMONY THAT THAT SUSPICIOUS CONDUCT WAS

 8  WATCHING YOU AS YOU DROVE AROUND THE ROAD?

 9  A.   CORRECT.

10  Q.   BUT NOTHING ELSE?

11  A.   AT THAT POINT, NO.  AT THAT POINT WHEN I APPROACHED, AS I

12  DROVE IN DRIVING WEST, GOING NORTH AND GOING EAST, THAT IS

13  CORRECT.  I MEAN, LIKE I SAID, THERE'S A LOT OF OTHER CARS IN

14  THE AREA AND SOME OF THEM ARE OCCUPIED, AND SOME ARE NOT.

15  THAT'S NOT COMMON BEHAVIOR.

16  Q.   TO WATCH YOU?

17  A.   RIGHT.  THAT DILIGENTLY, THAT -- JUST CURIOUSLY.

18  Q.   NOW, OFFICER HART, IT'S YOUR TESTIMONY THEN THAT YOU PARKED

19  20 TO 25 FEET AWAY FROM MISS MAYS' CAR?

20  A.   I THINK SO.

21  Q.   WHY DIDN'T YOU PARK CLOSER?

22  A.   I DON'T KNOW, BUT I DON'T THINK I WAS RIGHT NEXT TO THAT

23  VEHICLE.  THAT'S MY RECOLLECTION.  I DON'T RECALL BEING RIGHT

24  NEXT TO THAT CAR.

25  Q.   SO YOU DON'T RECALL EXACTLY HOW FAR, BUT YOU DON'T RECALL
```