SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

   450 Golden Gate Avenue, 11th Floor
   San Francisco, California  94102
   Telephone:  (415) 436-6809
   Facsimile: (415) 436-7234
   wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. No. 07-0295 MAG |
|    Plaintiff, ) | UNITED STATES' OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES |
|    v. ) | |
| ) | Hearing Date: November 20, 2007 |
| NICOLE MAYS, ) | Time:       11:00 a.m. |
| ) | Judge:     Hon. Elizabeth D. Laporte |
|    Defendant. ) | |

## **I. INTRODUCTION**

The parties appeared before the Honorable Elizabeth D. Laporte on November 20, 2007, for an evidentiary hearing on the Defendant's Motion to Suppress Evidence. Defendant contends that Sergeant Thomas Hart ("Sergeant Hart") violated her Fourth Amendment rights by stopping her without reasonable suspicion that she had been, was presently, or was about to become engaged in criminal activity and therefore the evidence seized following his initial contact with her should be suppressed. Defendant's contentions are incorrect and her motion to suppress should be denied.

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                             1

## II. STATEMENT OF FACTS

The facts cited in this Opposition Motion are taken from the Transcript of Evidentiary Hearing dated 11/20/07 (hereinafter, "Trans"). *See* Defendant's Supplemental Brief Exhibit A. The facts in issue are as follows: (1) whether the defendant was initially blocked in by the officer's vehicle such that the defendant was blocked in; (2) whether the defendant's watched Sergeant Hart's approach of their car; (3) whether there was a plate missing from the front of vehicle; (4) whether Sergeant Hart observed Jenny Benzon ("Ms. Benzon") bend at the waist in an effort to conceal something; and (5) whether Sergeant Hart observed materials associated with drug use in plain view after reaching the vehicle.

### A.     THE DEFENDANT'S VEHICLE WAS NOT BLOCKED.

Sergeant Hart testified that he was in uniform that day in a marked Park Police patrol vehicle. *See* Trans. at 5:16-17; 5:20-21. He was alone. *Id*, at 5:22-23. The defendant's car was parked away from other cars and was not blocked in. *Id*, at 8:18-19. The other two occupants of the vehicle, Ms. Benzon and Christopher McNatt ("Mr. McNatt"), also testified that the car was not blocked in. *Id*, at 67:4-10; 68:23-24; 86:25-87:4. The defendant admitted that to the extent that the car was ever blocked in, it only became blocked in after the second police vehicle arrived and Ms. Benzon was outside the vehicle. *Id*, 114:5-7; 117:25-118:5. The defendant also stated this occurred after Ms. Benzon got out of the car and Sergeant Hart observed the spoon with the tar heroin on it. *Id*, 106:14-19; 121:19-25.

### B.  THE OCCUPANTS IN THE DEFENDANT'S VEHICLE WERE WATCHING SERGEANT HART.

Sergeant Hart did not recall the exact approach of his vehicle but did testify that he observed the occupants of the vehicle watching him as he drove around Crissy Field and as he approached their vehicle. *Id*, at 10:24-11:6. Ms. Benzon drew a diagram for the Court of Sergeant Hart's exact approach through Crissy Field and stated she was "pretty sure" it arrived as she described. *Id*, at 50:8-11. In order to say how he approached, she must have been watching him. She also admitted to seeing the vehicle prior to Sergeant Hart's approach. *Id*, at

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                            2

1  50:21-25. The defendant also drew a diagram for the Court of Sergeant Hart's approach in the
2  Park Police vehicle. *Id*, at 101:3-6; 102:17-103:8. The defendant also testified that she watched
3  Sergeant Hart's approach in the vehicle. *Id*, at 116:16-19. Mr. McNatt testified that Ms. Benzon
4  took note of the police presence prior to Sergeant Hart's approach of the vehicle. *Id*, at 77:8-11.
5  Mr. McNatt testified that he noticed the police car and that they were only parked for
6  approximately ten seconds before the police arrived at their vehicle. *Id*, at 74:18-23; 79:16-23.
7  Mr. McNatt's time estimate of only being parked for ten seconds is inconsistent with the
8  defendant's testimony that, over the course of several minutes, she got out of the car, went to the
9  restroom, and returned to the car prior to Sergeant Hart approaching the vehicle. *Id*, at 116:6-19.

### C. THE LICENSE PLATE.

Sergeant Hart observed there was no front plate properly affixed to her vehicle. *Id*, at 9:1-5; 23:20-22; 40:7-10. This is a violation of the California Vehicle Code. *Id*, at 9:9-10; 12:5-8; 41:5-15. Mr. McNatt testified that he did not know whether there was a plate on the vehicle. *Id*, at 76:15-16; 77:20-24. He testified that Sergeant Hart did not raise the issue when he approached the vehicle. *Id*, at 77:25-78:5. Ms. Benzon did not testify whether there was a plate on the front of the car on the day of arrest. Ms. Benzon did testify that she did not see a plate on the dashboard of the car. *Id*, at 52:25-53:2. The defendant testified that there was a plate properly affixed to the vehicle. *Id*, at 100:17-19. However, the defendant also received, and signed, a citation for missing a license plate. *Id*, at 109:14-16; 122:9-12. The defendant also testified that she is not the owner of the vehicle and no longer has possession of the vehicle. *Id*, at 110:20-21; 116:25-117:6. Defense also called two witnesses who were not percipient witnesses in this case, John Sullivan ("Mr. Sullivan") and Carmela Perez ("Ms. Perez"). Mr. Sullivan testified that there was a plate on the vehicle three weeks prior to the incident in this case. *Id*, at 93:6-8. Ms. Perez testified there was a plate on the car one month after the incident. *Id*, 96:20-21. Mr. Sullivan testified that he is the defendant's ex-boyfriend and Ms. Perez testified that she is the mother of the defendant's fiancé. *Id*, at 89:9-10; 99:2-4.

//

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                                  3

### D. FURTIVE MOVEMENT BY MS. BENZON.

Sergeant Hart observed Ms. Benzon bend at the waist in an attempt, from his vantage point, to hide something. *Id*, at 11:6-15; 30:6-15; 36:20-21; 42:22-25. The defendant testified that she believed Ms. Benzon was trying to conceal the drugs from her when she was returning from the restroom. *Id*, at 124:16-19. Although the defendant believed Ms. Benzon was concealing the drugs from her, she also testified that did not see Ms. Benzon make any furtive movement. *Id*, at 124:20-25. Mr. McNatt testified he was in the back seat of the vehicle. *Id*, at 73:24-25. He testified that he did not see Ms. Benzon bend at the waist but did hear her talking about having seen the police. *Id*, at 77:5-10. Ms. Benzon testified that she made no furtive movement. 64:12-14. She did testify that she knew about the narcotics and narcotics paraphanalia in the car. *Id*, at 64:2-16. She testified that she was nervous while Sergeant Hart approached the car knowing there was narcotics in the car but that she did not know whether her nervousness was apparent in her demeanor. *Id*, at 64:21-65:5. Sergeant Hart also testified that narcotics paraphernalia was recovered from underneath Ms. Benzon's seat. *Id*, at 16:13-15.

### E. NARCOTICS PARAPHERNALIA.

Sergeant Hart testified that when he reached the vehicle, he observed, in plain view, a bottle cap that contained some water and a disposable lighter. *Id*, at 12:9-12. Sergeant Hart has made approximately two hundred narcotics arrests, participated in hundreds more narcotics cases, and has previously testified as an expert in the field of narcotics in the State of California and the State of Maryland. *Id*, at 5:2-13. In his extensive training and experience, he believed these materials to be commonly used to ingest narcotics. *Id*, at 12:18-20. Ms. Benzon testified that although she did not remember whether there was a lighter she did remember there was a bottle cap with water in it in plain view that was there for the purposes of using drugs. *Id*, at 53:15-54:7; 63:16-25. The defendant testified that there was a lighter in the car but that it was not in plain view. *Id*, at 105:24-106:6. The defendant testified that she did not see the bottle cap but that the car was "a mess". *Id*, at 116:2-5. Mr. McNatt testified that he was not seated in a position where he could view those materials. *Id*, at 77:14-19. Mr. McNatt also denied all

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                              4

knowledge of drugs or drug paraphernalia in the car. *Id*, at 85:2-11. He also testified that it was his belief that if there was drugs in the car that he would have been arrested. *Id*, at 85:16-17. Sergeant Hart testified that after seeing the narcotics paraphernalia, he asked Ms. Benzon to step out of the vehicle. *Id*, at 13:19-14:13. When she stepped out of the vehicle, he observed a thick dark substance affixed to the bottom of one of the spoons that appeared to him to be "tar" heroin. *Id*, at 14:14-21.

### III. ARGUMENT

**A.    THERE WAS NO SEIZURE UNTIL SERGEANT HART ASKED MS. BENZON TO STEP OUT OF THE VEHICLE.**

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.

In the Defendant's initial Motion to Suppress Evidence in this case, the Defendant's Declaration alleged that she was blocked in on all sides by police cars. *See* Def. Mot. To Suppress, Exhibit B, ¶ 3. Testimony at the hearing revealed that Sergeant Hart arrived alone on the scene and no other officers arrived on the scene until after Mr. Benzon got out of the vehicle and Sergeant Hart saw the spoon with tar heroin on it. *See Trans*, at 5:22-23; 67:4-10; 68:23-24; 86:25-87:4; 114:5-7; 117:25-118:5; 106:14-19; 121:19-25. Therefore, Sergeant Hart did not effect a seizure of the defendant within the meaning of the Fourth Amendment when he parked his vehicle or approached the defendant's vehicle. He only seized the occupants of the vehicle when he asked Ms. Benzon to step out of the vehicle. By that point, he already had reasonable suspicion that criminal activity was afoot.

**B.    BY THE TIME SERGEANT HART ASKED MS. BENZON TO STEP OUT OF THE VEHICLE, HE HAD REASONABLE SUSPICION THAT CRIMINAL ACTIVITY WAS AFOOT.**

It is well-settled that a police officer may, in appropriate circumstances, conduct a brief investigatory detention where the officer has reasonable suspicion that criminal activity is afoot.

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                5

*Terry v. Ohio*, 392 U.S. 1, 22 (1968); *see also U.S. v. Place*, 462 U.S. 696, 702 (1983). "[T]he level of suspicion required for a *Terry* stop [i.e. reasonable suspicion] is obviously less demanding than that for probable cause." *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989). Whether an officer has reasonable suspicion is based on the totality of the circumstances, taking into account the specific articulable facts along with the rational inferences to be drawn from the facts. *U.S. v. Rocha-Lopez*, 527 F.2d 476, 477 (9th Cir. 1975). Moreover, the facts giving rise to the "reasonable suspicion" are measured against an objective reasonable person standard and not by the subjective impressions of the particular officer. *Id*.

### 1. NO LICENSE PLATE WAS PROPERLY AFFIXED TO THE FRONT OF DEFENDANT'S VEHICLE.

United States Park Police have authority to investigate and make warrantless arrests for offenses committed in their presence. 16 U.S.C. § 1a-6(b). If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). When an officer has this discretion to arrest for a petty misdemeanor committed in his or her presence, the officer may exercise that discretion. *See U.S. v. Zislovich*, 150 Fed.Appx. 607, 610 (9th Cir. 2005). Here, the defendant was seated in the driver seat of a car that did not have a plate affixed to the front of the vehicle, in violation of California Vehicle Code Section 5200. California courts have consistently found "the lack of a front license plate has long been recognized as a legitimate basis for a traffic stop." *People v. Saunders*, 38 Cal. 4th 1129, 1136 (2006).

Sergeant Hart testified at the evidentiary hearing that he observed there was no front plate properly affixed to defendant's vehicle. *See Trans.*, at 9:1-5; 23:20-22; 40:7-10. Defendant maintained that there was a front plate on the car. *Id.,* at 100:17-19. Ms. Benzon did not testify whether there was a front plate properly affixed and Mr. McNatt testified that he did not know. *Id*, at 76:15-16; 77:20-24. Among the percipient witnesses, there is therefore a conflict between the testimony of Sergeant Hart and that of the Defendant and, as the hearing's factfinder, the Court must determine which testimony is true.

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                              6

### 2. SERGEANT HART HAD REASONABLE SUSPICION INDEPENDENT OF THE LICENSE PLATE.

In the event the Court believes the defendant's testimony and finds there was a plate on the front of the vehicle, Sergeant Hart still had reasonable suspicion independent of the license plate based on the other indicia of criminal activity that he observed. In *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971), the Court determined that police may seize without a warrant those items left in plain view. However, the evidence must have an "incriminating character" that is "immediately apparent." *Horton v. California*, 496 U.S.128, 136-137 (1990). A variety of factors can give rise to reasonable suspicion. *See United States v. Diaz-Juarez*, 299 F.3d 1138, 1142-43 (9th Cir. 2002) (reasonable suspicion to investigate for drug smuggling where officer observed vehicle registered out of the area driving erratically late at night in an area known for smuggling); *see also United States v. Hughes*, 2006 U.S. Dist. LEXIS 34681 (D. Ariz. 2006)(reasonable suspicion where officer observed defendant was nervous during traffic stop, there were things in the car covered in blankets, there was a cooler in the passenger seat, and the window was rolled down four inches).

Here, Sergeant Hart observed the occupants of the vehicle watching him as he drove through Crissy Field and approached their car. He saw Ms. Benzon quickly bend at the waist in what he believed was an effort to conceal something. He observed materials in the car that were consistent with the use of narcotics.

#### a. Deference to Law Enforcement Experience.

A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e. g., United States v. Ortiz*, 422 U.S. 891, 897 (1975). Things which are not suspicious to a layman may be viewed by an experienced officer in an entirely different light. *See Ornelas v. United States*, 517 U.S. 690 (1996)(Court found that weight should be given to an officer's inference that a loose panel below the back seat armrest may signify that drugs are secreted inside they panel whereas to a layman it would only suggest wear and tear in the vehicle). Sergeant Hart has participated in hundreds of narcotics related cases and has previously testified as an expert in narcotics cases. While prolonged eye contact, furtive

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                    7

1 movements, a bottle cap with water, and a lighter may not mean anything to people who do not
2 work in law enforcement, Sergeant Hart testified that they all suggested criminal activity to him.
3 Weight should be given to these inferences in light of his extensive experience.

### b. Sergeant Hart's Subjective Intentions are Irrelevant.

Defendant elicited testimony from Sergeant Hart regarding his precise intention in approaching the defendant's vehicle. *Trans.*, at 24:21-23; 42:2-4. However, it is irrelevant whether Sergeant Hart approached the vehicle solely because of a vehicle infraction or whether he also suspected that the occupants may have been involved in other criminal activity. *See also Devenpeck v. Alford*, 543 U.S. 146, (2004) ("[The] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *see Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006) (under *Devenpeck*, the subjective reason that the officer arrested defendant is irrelevant so long as the available facts suggested that defendant was committing a crime). Any argument that would evaluate police action based on an officer's subjective motive conflicts with the principle that the validity of a search or a seizure under the Fourth Amendment turns on "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," not on the officer's state of mind at the time the challenged action was taken. *Maryland v. Macon*, 472 U.S. 463, 470-471 (1985). In light of that principle, the Supreme Court has held that an officer's motives or intent are irrelevant in a variety of Fourth Amendment contexts. *Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001). *Whren v. United States* itself relied on *United States v. Robinson*, 414 U.S. 218 (1973), for the proposition that "a traffic-violation arrest ... [will] not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search.'" 517 U.S., at 812-813.

If Defendant's Motion to Suppress is based on the premise that Sergeant Hart violated her Fourth Amendment rights, then the relevant issue is not Sergeant Hart's subjective intentions but whether he had reasonable suspicion to expand the scope of the encounter in asking Ms. Benzon to step out of the vehicle.

### c. Indicia of Criminal Activity.

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                8

At the time Sergeant Hart asked Ms. Benzon to step out of the vehicle, he had observed (1) the occupants of the vehicle watching him as he drove through Crissy Field and approached their car; (2) Ms. Benzon bending at the waist in a quick movement which appeared to him that she was concealing something; and (3) materials in car that were consistent with the use of narcotics. The totality of these circumstances gave Sergeant Hart reasonable suspicion to expand the scope of his encounter with the occupants of the vehicle.

The furtive movements of the passenger are a factor that supports a finding of reasonable suspicion. *See United States v. Garcia-Barron*, 116 F.3d 1305, 1308 (9th Cir. 1997) (passengers ducking down in van as it passed Border Patrol agents are a factor supporting a finding of reasonable suspicion); *See also United States v. Nam*, 1 Fed. Appx. 738 (9th Cir. 2001)(furtive movements are a factor supporting a finding of reasonable suspicion to support asking a defendant to get out of a car); *see also United States v. Garcia-Rivera*, 353 F.3d 788, 791 (9th Cir. 2003)("Given [defendant's] furtive movement and inability to provide any valid documentation, the officer properly expanded the scope of the stop beyond the cracked windshield violation." ).

Sergeant Hart also observed materials in plain view consistent with use of a controlled substance which led him to believe the vehicle could be carrying narcotics. This also gave him reasonable suspicion to ask Ms. Benzon to step out of the vehicle. "[When,] during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for a greater intrusion unrelated to the traffic offense." *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994). In *New York v. Belton*, a police officer pulled over the defendant for speeding, smelled marijuana, observed an envelope that he thought might contain marijuana, and asked the occupants to step out of the vehicle. 453 U.S. 454, 455-456 (1981). The Supreme Court determined that the officer had reasonable cause and probable cause to arrest the defendants and upheld the search of the vehicle and the containers within the vehicle. *Id*, at 460. *See also United States v. Kirkpatric*k, 5 F. Supp. 2d 1045 (D. Neb. 1998)(Court found an officer had a reasonable, articulable suspicion that criminal activity was afoot that justified

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                    9

expanding scope of investigation based on defendant's answers to his questions).

### d. Automobile Exception to the Fourth Amendment.

In general automobiles receive less protection under the Fourth Amendment than do homes and other distinctively private places. Passengers may be ordered out of the vehicle. *See Maryland v. Wilson*, 519 U.S. 408 (1997); *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1076 (9th Cir. 2003). In *United States v. Class*, the Supreme Court held that it was reasonable for police to open a car door and move some papers to examine a dashboard vehicle identification number ("VIN"), even though there was no reasonable suspicion to support such a search. The Court determined there was no reasonable expectation of privacy in the VIN since it is normally in plain view. *U.S. v. Class*, 475 U.S. 106, 119 (1986).

Here, Sergeant Hart did not even effect a traffic stop of this vehicle. It was already parked in a public park where anyone could have approached it. Sergeant Hart approached the vehicle and asked Ms. Benzon to step out of the vehicle only after he had observed specific and articulable facts which gave rise to reasonable suspicion. Therefore it was not an unlawful detention that would justify suppression of the evidence in this case.

### IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Defendant's Motion to Suppress all evidence and statements arising from the encounter between Sergeant Hart and the Defendant.

Dated: December 14, 2007

                                          Respectfully Submitted

                                          SCOTT N. SCHOOLS
                                          United States Attorney

                                          _____/s/_____
                                          WENDY THOMAS
                                          Special Assistant United States Attorney

UNITED STATES' SUPP. OPP. TO
DEF. MOT. TO SUPPRESS
CR-07-0295 MAG                10