IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>NICOLE MAYS,<br><br>        Defendant.<br>_____/ | No. CR-07-00295 EDL<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND SETTING STATUS CONFERENCE** |

Defendant Nicole Mays is charged with two counts of possessing a controlled substance (heroin and marijuana), in violation of 21 U.S.C. § 844(a). On August 14, 2007, Defendant filed a Motion to Suppress Evidence and Statements. On August 27, 2007, the Government filed an opposition. On September 5, 2007, Defendant filed a reply. The Court set an evidentiary hearing for October 9, 2007. On October 3, 2007, the parties stipulated to continue the hearing date to November 20, 2007. On November 20, 2007, the Court held an evidentiary hearing, taking testimony from six witnesses.

**FACTS**

On March 18, 2007, Defendant was the driver of a Toyota Camry that was parked in the Crissy Field East Beach area in San Francisco with passengers Jenny Benzon and Christopher McNatt. Transcript of Nov. 20, 2007 Hearing ("Tr.") at 6:1-2; 89:25; 45:22-46:6. On that date, Sergeant Thomas Hart, a sergeant with the United States Park Police, was on patrol alone in a marked patrol vehicle in the Crissy Field East Beach area. Tr. at 4:16-21; 5:14-6:2. As he drove into the area, he observed Defendant's vehicle parked away from the other cars in a grassy area, near the restrooms. Tr. at 8:16-19; 101:4-102:8. As he drove around, he observed the occupants of Defendant's car follow him with their eyes. Tr. at 8:19-21. Ms. Benzon testified that the police car

approached from the north and proceeded to the south, indicating that she did follow the patrol car's approach. Tr. at 48:24-49:7. Defendant also testified that she saw Sergeant Hart's car approaching. Tr. at 102:18-22.

Defendant and Ms. Benzon testified that Sergeant Hart's car was parked five to six feet in front of Defendant's car in a perpendicular position. Tr. at 47:14-48:2; 49:23-50:7; 108:3-12. Sergeant Hart testified that he parked his car about twenty to twenty-five feet to the east of Defendant's vehicle. Tr. at 9:16-19. In her declaration in support of her Motion to Suppress, Defendant testified that she "was suddenly surrounded by United States Park Police vehicles on all sides." Mot. to Suppress Ex. B (Declaration of Nicole Mays) at ¶ 3. At the hearing, however, Defendant acknowledged that she was not in fact suddenly surrounded on all sides. Rather, initially, her car was only blocked in the front by Sergeant Hart's vehicle. Only later, after Sergeant Hart ordered Ms. Benzon out of the car, was her car blocked in the rear by another police vehicle, with trees to the right of her car and another civilian car to the left. Tr. at 112:24-114:13. The Court does not credit Defendant's testimony about the location of Sergeant Hart's car in view of her exaggeration in her declaration.

Sergeant Hart testified that Defendant's vehicle did not have a front license plate affixed, which was a violation of California Vehicle Code 5200. Tr. at 9:3-8. Sergeant Hart approached the vehicle for the purpose of speaking to the occupants about the Vehicle Code violation. Tr. at 10:5-7. The Court addresses the issue of the credibility of this testimony below. As he approached the vehicle on foot, all of the occupants were watching him. Tr. at 10:21-25. He saw Ms. Benzon immediately bent quickly and suddenly at her waist and bent down as if to conceal herself from a police officer. Tr. at 11:6-9. The Court does not credit testimony to the contrary from Ms. Benzon and Defendant. Ms. Benzon denied bending at the waist as Sergeant Hart approached, but she also testified that she knew there were drugs and drug paraphernalia in the car and acknowledged that she was nervous and did not know whether her nervousness was apparent from her demeanor. Tr. at 64:2-65:9. Defendant testified that she did not see Ms. Benzon bend down, but also testified that she believed that Ms. Benzon had drugs and bent at the waist to conceal the drugs from Defendant upon Defendant's return from the restroom. Tr. 123:19-22; 124:16-25.

When Sergeant Hart arrived at Defendant's vehicle, he walked to the passenger side of the vehicle where the window was down and put his head into the car. Tr. at 9:22-23; 51:20-22; 52:8-13; 104:1-3. Defendant asked whether it was illegal to park on the grassy area and he said that it was not. Tr. at 11:14-20; 104:4-8. Defendant, Ms. Benzon and Mr. McNatt testified that Sergeant Hart asked them if they had been drinking. Tr. at 52:14-15; 74:22-25; 104:1-4.

Sergeant Hart testified that he informed Defendant that her car did not have a front license plate affixed to the car. Tr. at 11:21-12:1. He testified further that he thinks he saw the license plate on the dashboard. Tr. at 12:2-4. The Court does not credit this testimony. He did not include the detail of the license plate being on the dashboard in his contemporaneous report of the incident or in his declaration filed in connection with Defendant's Motion to Suppress, but only belatedly at the hearing, after Defendant had made clear that the issue of the missing front license plate would be central. Also, he acknowledged that when he wrote the incident report in this case, his memory was much fresher than it was at the hearing. Tr. at 28:7-11. Moreover, Defendant presented substantial circumstantial evidence that the front license plate was affixed to the car on March 18, 2007. Ms. Benzon testified that on March 21, 2007, three days after the incident, when she picked Defendant up from custody, she and Defendant checked the car and a front license plate was affixed to the car. Tr. at 59:5-14. John Sullivan, the owner of the car at the time that Defendant was driving it, testified that as of February 25, 2007, license plates were affixed to the front and back of the car. Tr. at 93:6-8. Defense witness Carmela Perez testified that on April 23, 2007, Defendant's car had front and back license plates attached. Tr. at 96:18-24. For these reasons, the Court assumes for purposes of this decision that the front license plate was affixed to the vehicle on March 18, 2007.

Sergeant Hart testified that before he spoke to the occupants of the car, he saw in plain view a soda or water bottle cap that contained a little bit of water and a disposable lighter on the dashboard. Tr. at 12:11-17. He testified that, based on his experience and his narcotics training, these items are consistent with use of controlled substances such as heroin. Tr. at 12:18-13:18. Specifically, a bottle cap is a way to store a small amount of water that is used to dissolve the controlled substance, and the lighter is used as a heat source to expedite the dissolving process. Tr. at 13:13-18. Ms. Benzon confirmed that there was a bottle cap filled with water in the car for the

3

1  purpose of using the drugs that were in the car, which might have been on the middle console. Tr. at
2  53:18-24.
3      After seeing the drug paraphernalia and observing Ms. Benzon quickly bend at the waist as if
4  to conceal something, Sergeant Hart asked Ms. Benzon to get out of the vehicle. Tr. at 13:19-14:4;
5  82:24; 104:20-21. Immediately after she stepped out, he saw two spoons on the passenger seat
6  where she had been sitting, one with a dark substance affixed to the inside of the spoon, and a plastic
7  bindle containing a dark, hard substance that he immediately recognized as heroin. Tr. 14:16-24.
8  He then asked the two other occupants to step out of the car. Tr. at 15:2-4. Sergeant Hart testified
9  that Defendant responded "It's mine" when he asked who the heroin belonged to. Tr. at 15:2-8.
10 Defendant testified that Sergeant Hart asked who owned the car, and she said, "It's mine." Tr. at
11 104:14-16. Sergeant Hart checked for active warrants for each of the car's occupants, and found
12 two active warrants for Defendant. Tr. at 16:3-7. Sergeant Hart then arrested Defendant, and let
13 Mr. McNatt and Ms. Benzon leave with the car. Tr. at 16:8-10; 37:17-18; 57:9-13; 82:5-7.

**DISCUSSION**

15     A police officer may make an investigatory detention where the officer has reasonable
16 suspicion of criminal conduct. See Delaware v. Prouse, 440 U.S. 648, 653 (1979); Terry v. Ohio,
17 392 U.S. 1, 22 (1968). "Reasonable suspicion is formed by 'specific articulable facts which,
18 together with objective and reasonable inferences, form the basis for suspecting that the particular
19 person detained is engaged in criminal activity.'" United States v. Colin, 314 F.3d 439, 442 (9th
20 Cir. 2002) ("An officer's inferences must 'be grounded in objective facts and be capable of rational
21 explanation.'"). The subjective intent of a police officer in engaging in a Fourth Amendment seizure
22 is irrelevant. See Tatum v. City & County of San Francisco, 441 F.3d 1090, 1094 (9th Cir. 2006)
23 ("Under Devenpeck, the subjective reason that Officer Smith arrested Fullard is irrelevant so long as
24 the available facts suggested that Fullard was committing a crime.") (citing Devenpeck v. Alford,
25 543 U.S. 146 (2004)). A court must look to the totality of the circumstances to determine whether
26 the officer had a "particularized and objective basis" for suspecting criminal activity. Id. The
27 officer "must be able to articulate more than an inchoate and unparticularized suspicion or 'hunch'
28 of criminal activity." United States v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000).

4

//

### A. Sergeant Hart's initial contact with the occupants of the car did not implicate the Fourth Amendment

The Fourth Amendment is not implicated when law enforcement officers approach an individual in public and ask him if he is willing to answer questions; "this is true whether an officer approaches a person who is on foot or a person who is in a car parked in a public place." United States v. Washington, 490 F.3d 765, 770 (9th Cir. 2007) (citing United States v. Kim, 25 F.3d 1426, 1430 (9th Cir. 1994)). In Washington, the defendant was sitting in his lawfully parked car when a police officer, without reasonable suspicion of any criminal activity, approached the vehicle and asked the defendant what he was doing there. The defendant answered, consented to a search of his person and stepped out of his car at the officer's request to be searched and then consented to a search of his vehicle, which turned up a firearm. The court determined that this initial encounter was not a seizure under the Fourth Amendment. Specifically, the police officer did not block the defendant's car in, and did not activate the car's sirens or lights. The officer approached the car on foot, and did not brandish his flashlight as a weapon. The officer was uniformed, but did not touch his baton or firearm during the encounter. The initial questioning of the defendant was brief and consensual. Under these circumstances, a reasonable person would have felt free to terminate the encounter and leave. Washington, 490 F.3d at 770 ("In sum, Officer Shaw was entitled to question Washington for investigatory purposes, and the mere asking of questions, including asking for permission to search Washington's person, raised no Fourth Amendment issue so long as a reasonable person in Washington's situation would have felt free to leave."); see also Kim, 25 F.3d at 1430-31 (holding that an officer's initial encounter with the defendant, who was seated in his lawfully parked car, was not a seizure where the officer parked his car partially blocking the defendant's car, approached the defendant's car on foot, and asked for, and received permission to question the defendant: "Absent indicia of force or aggression, a request for identification or information is not a seizure or an investigatory stop.").

Similarly, here, Sergeant Hart's initial questioning of the occupants of Defendant's car did not implicate the Fourth Amendment. There is conflicting evidence about where Sergeant Hart parked his vehicle. Sergeant Hart testified that he parked about twenty feet away from the car. But

5

even if Defendant's testimony is credited that his police vehicle was parked perpendicular to the front of Defendant's car, about five or six feet away, Defendant concedes that when Sergeant Hart first made contact, her car was not blocked from the back. Thus, she could have backed out and left. Tr. at 108:13-17. Sergeant Hart did not activate the sirens or lights on his car. He was uniformed, approached the passenger side of the car on foot and did not brandish a weapon. Although there is no evidence that Sergeant Hart first asked permission to question the occupants of the car, the record reveals that Defendant did not object to Sergeant Hart's questioning, and in fact engaged Sergeant Hart, asking if it was permissible to park on the grass. Tr. at 104:1-18. This demonstrates Defendant's consent to participate in dialogue with Sergeant Hart. Further, the fact that Sergeant Hart may have leaned his head into an already rolled down window does not constitute a search. See United States v. Orozco, 590 F.2d 785, 792 (9th Cir. 1979) ("Moreover, we find that the deputies were not conducting a "search" when they looked through the car windows. They were lawfully within the area, investigating the suspicious behavior of appellants. . . . The deputies' looking through the windows of a vehicle parked on a public street did not violate appellant's reasonable expectations of privacy; anyone walking past the vehicle could easily have observed the packages of cocaine and heroin.") (citing United States v. Coplen, 541 F.2d 211, 214 (9th Cir. 1976) ("It is well settled that visual observation by a law enforcement officer situated in a place where he has a right to be is not a search within the meaning of the fourth amendment."). Under the totality of the circumstances, a reasonable person in Defendant's position would have felt free to leave at this point, so under Washington and Kim, the Fourth Amendment is not implicated.

    **B.    Sergeant Hart had reasonable suspicion to order Ms. Benzon to leave the car based on the totality of the circumstances including the facts that Ms. Benzon made a furtive movement and that he had observed drug paraphernalia in plain view**

The Court assumes that the Fourth Amendment was implicated when Sergeant Hart ordered Ms. Benzon from the car, as a reasonable person in Defendant's position might well not feel free to leave the scene when the passenger of her car was ordered to exit the vehicle. As stated above, for purposes of this motion, the Court also credits Defendant's circumstantial evidence that the vehicle displayed a front license plate affixed to the car on the day of this incident. However, by this time, Sergeant Hart had reasonable suspicion of criminal activity. See, e.g., United States v. White, 42

6

F.3d 457, 460 (8th Cir. 1994) ("If during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has 'justification for a greater intrusion unrelated to the traffic offense.' [citation omitted]."). In addition to observing a furtive movement by Ms. Benzon, once Sergeant Hart looked inside the vehicle, he observed a bottle cap with water in it and a lighter in plain view. Tr. at 12:11-15. The Court credits Sergeant Hart's testimony that these items were on the dashboard, even though Ms. Benzon testified that they were in the middle console of the car. Ms. Benzon was clearly nervous when Sergeant Hart arrived and she made a furtive movement to conceal drugs or drug paraphernalia, so her testimony on the location of the bottle cap and lighter is not credible. In any event, either way, the Court believes the officer's testimony that the evidence was in plain view.

Police may conduct a seizure without a warrant if indicia of criminal activity are in plain view. See Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971) ("It is well established that under certain circumstances the police may seize evidence in plain view without a warrant."). Items in plain view, however, must have an "incriminating character" that is "immediately apparent." Horton v. California, 496 U.S. 128, 136-37 (1990). Defendant argues that the bottle cap and lighter are non-contraband items, but the Court credits Sergeant Hart's testimony based on his many years of experience in narcotics cases that these items indicated drug use. Ornelas v. United States, 517 U.S. 690, 700 (1996) ("In a similar vein, our cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists. [citation omitted]. To a layman the sort of loose panel below the back seat armrest in the automobile involved in this case may suggest only wear and tear, but to Officer Luedke, who had searched roughly 2,000 cars for narcotics, it suggested that drugs may be secreted inside the panel.") (citing United States v. Ortiz, 422 U.S. 891, 897 (1975)). Here, the occupants of the car watched Sergeant Hart as he drove through Crissy Field where Defendant's car was parked, the passenger made a furtive movement as if to conceal something from him, and the officer observed a bottle cap with water and a lighter in the front compartment of the car. To Sergeant Hart, a seasoned officer with experience in narcotics cases, these facts added up to criminal activity. Accordingly, Sergeant Hart had reasonable suspicion after seeing the bottle cap with water and the lighter to expand the scope of

7

the investigation and to conduct a lawful seizure under the Fourth Amendment.  See White, 42 F.3d at 460.

**CONCLUSION**

Accordingly, Defendant's Motion to Suppress is denied.  A status conference is scheduled for January 18, 2008 at 9:30 a.m.

**IT IS SO ORDERED.**

Dated: January 9, 2008

ELIZABETH D. LAPORTE
United States Magistrate Judge