BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA  94102
Telephone:  (415) 436-7700

Counsel for Defendant MAYS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-0295 MAG |
| Plaintiff, | **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS** |
| v. | |
| | Pretrial Date: April 1, 2008 |
| | Time:  2:00 p.m. |
| NICOLE MAYS, | Court: The Honorable Elizabeth D. Laporte |
| Defendant. | |

## INTRODUCTION

The government's case on Count One rests largely on a single disputed fact.  Officer Thomas Hart of the United States Park Police claims that Ms. Mays declared "it's mine" when he asked the three occupants of Ms. Mays' car "who owned the heroin."  *See* Evidentiary Hearing Transcript at 15:2-8.  Ms. Mays, in turn, denies making this statement, which is supported by passenger Jenny Benzon.  *See* Transcript at 56: 2-4.  If this statement is admitted into evidence, much of the trial on Count One will turn on which version of events the jury believes.  As this statement was allegedly taken in violation of Ms. Mays' Miranda rights, however, the government's version of events requires this Court to suppress the statement.

\\

**STATEMENT OF FACTS**

All facts contained herein are taken from the Transcript of Evidentiary Hearing dated November 20, 2007, at which time this Court heard extensive testimony about the facts at issue in ths instant motion. According to government witness Sergeant Thomas Hart ordered passenger Jenny Benzon out of the car, at which time he saw two spoons, one of which had tar heroin residue on it, as well as a bindle of heroin. *See* Trans. at 14:16-21, 35:11-20. After detecting the heroin, Sergeant Hart maintains that he asked all three passengers of the car, including Ms. Mays, who the heroin belonged to. *Id.* at 15:1-4. According to Sergeant Hart, only Ms. Mays responded "it's mine." *Id*. at 15:8. At no time did Sergeant Hart issue Miranda warnings to Ms. Mays or any of the three passengers, even after seeing the illegal drugs on the front passenger seat. Ms. Mays' alleged statement to Sergeant Hart allegedly admitting that the drugs were hers was thus an unMirandized confession.

In the Court's Order on Defendant's Motion to Suppress, this Court held that at the time Sergeant Hart ordered Ms. Benzon from the car, "a reasonable person in Defendant's position might well not feel free to leave the scene when the passenger of her car was ordered to exit the vehicle." See Order on Motion to Suppress at 6:23-25.

**ARGUMENT**

**I.   Ms. Mays was Placed in Custody and Subsequently Interrogated Prior To Being Advised of Her *Miranda* Rights.**

Ms. Mays respectfully requests this Court to suppress the alleged statement she made to the interrogating officer before she was advised of her *Miranda* rights. The government's version of the evidence indicates that Ms. Mays made statements to the interrogating officer before he advised her of her *Miranda* rights. As this Court has previously found, a reasonable person in Ms. Mays' position would not have felt free to leave her car or Crissy Field once Sergeant Hart ordered Ms. Benzon out of the car and located the heroin. Accordingly, any and all statements she made to Officer Hart pre-*Miranda* must be suppressed.

**II.  As Ms. Mays Was In Custody, Sergeant Hart had a Constitutional Obligation to Advise Her of Her Miranda Rights Prior to Interrogation.**

Prior to beginning any custodial interrogation, the Fifth Amendment mandates that interrogating officers read individuals their *Miranda* rights.  "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977)(citing *Miranda*, 384 U.S. at 444).  "When an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." *Mathis v. United States*, 391 U.S. 1, 5 (1968)(citing *Miranda v Arizona*, 384 U.S. 436, 478 (1966)).

In *Alvarado v. Hickman*, the Ninth Circuit reiterated the correct legal standard for making an "in custody" determination.  *See Alvarado v. Hickman*, 316 F.3d 841 (9th Cir. 2002)(reversed on other grounds, *Alvarado v. Youngman*, 541 U.S. 652 (2004)).  In *Alvarado*, the court stated that "an in-custody determination requires an inquiry into whether 'a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.'" *Id.* at 843-844 (citing *Thompson v. Koehane*, 516 U.S. 99 (1995)).  "The only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Thompson*, 516 U.S. at 117 (Thomas, J dissenting)(citing *Stansbury v. California*, 511 U.S. 318, 322 (1994), quoting in turn *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)).  "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest?" *Id*. at 112.

The key issue the Court should thus focus on in making a determination whether or not Ms. Mays was "in custody" at the time she was interrogated is whether there was a restriction on her

individual freedom at that time. *See California v. Beheler*, 463 U.S. 1121, 1123-1124 (1983)(finding that the defendant was not "in custody" during his interrogation because he voluntarily agreed to accompany officers to the station house, was free to leave the station house at any time, agreed to talk with police about the incident, and was permitted to return home after the interview); *see also Thompson*, 516 U.S. at 105. In *Thompson*, the key factors utilized by the court in its determination that an interrogation was not custodial were the following: that Thompson voluntarily went to the police station upon request; that he was informed numerous times that he was free to leave; and that when the police had finished questioning Thompson, they allowed him to leave.[1] *Id.*

In sharp contrast to the fact patterns of the above-referenced cases, Ms. Mays was clearly not "free to leave" Crissy Field on March 18, 2008; nor would any reasonable person in Ms. Mays's position have felt free to leave. At the time Sergeant Hart allegedly demanded to know who the heroin belonged to, Ms. Benzon was out of the car, and the interrogating officer had located illegal drugs on the front seat of the car. The totality of the circumstances of this interrogation indicate that by this time, Ms. Mays was "in custody. The failure of the interrogating officer to read Ms. Mays (as well as the other passengers) their *Miranda* rights prior to interrogation mandates suppression of all statements made by Ms. Mays.

**CONCLUSION**

For the foregoing reasons, Ms. Mays respectfully requests that this Court suppress the alleged statement she made to Sergeant Hart regarding alleged ownership of the heroin, which was a

---

[1] Although the Supreme Court in *Thompson* remanded the findings of the Alaskan trial court to the Ninth Circuit for determination on the merits, the Ninth Circuit upheld the determination that Thompson's interrogation was not custodial on the same factors. *See* Thompson v. Keohane, 1998 U.S. App. Lexis 9432, p. 3 (9th 1998)(unpublished opinion.)

statement taken in violation of Ms. Mays' Fifth Amendment rights as articulated in *Miranda*.

Dated: March 18, 2008

>Respectfully submitted,
>
>BARRY J. PORTMAN
>Federal Public Defender
>          /S/
>_____
>ELIZABETH M. FALK
>Assistant Federal Public Defender